LYNCH et al., *Appellants*, v. MURPHY et al.

#### In Banc, December 23, 1893.

1. **Constitution:** DRAMSHOP: STATUTE: TITLE. The title of the act of April 20, 1891 (Laws, p. 128), which is as follows: "An act to regulate the sale of intoxicating liquors, in the original packages or otherwise" is not obnoxious to the constitutional requirement that "no bill * * * * shall contain more than one subject which shall be clearly expressed in the title." (Const., art. 4, sec. 28.)

Lynch v. Murphy.

2. ——: ——: ——. The generality of the title of an act is not objectionable so long as it is not used to conceal legislation incongruous in itself, or which by no fair intendment can be considered as having a necessary or proper connection with the title.

3. ——: ——: ——. No provision in a statute having natural connection with the subject expressed in it, is to be deemed within the constitutional inhibition that no bill shall contain more than one subject.

4. ——: ——: ——. Section 7 of the act of 1891 (Laws, p. 129) as amended by the act of 1893 (Laws, p. 150) is not invalid because of the provision therein made setting apart a portion of the dramshop license fund for road purposes. Such disposition of the fund is germane to the title of the act and has a natural relation to its subject.

5. ——: ——: ——. Nor is said section repugnant to the provisions of the constitution prohibiting special laws. (Const. art. 4, sec. 53.)

6. **Statute, Invalid in Part:** AMENDMENT. The rule that a valid law can not be enacted by amending an invalid one does not apply where the first act is only partly invalid.

*Appeal from Jackson Circuit Court.*—HON. J. W. HENRY, Judge.

AFFIRMED.

*A. M. Allen* for appellants.

(1) The title of both acts are restricted to "the sale of intoxicating liquors in original packages," the word "or otherwise" expresses nothing and means nothing, and the subject of said sections of said acts not clearly expressed in the title. Cooley on Constitutional Limitations [5 Ed.], p. 174. *St. Louis v. Tiefel*, 42 Mo. 592; *Town of Cantril v. Savier*, 59 Iowa, 26; *Swayne v. Briton*, 17 Kansas, 625; *State v. Persinger*, 76 Mo. 346; *Scharp v. Tasker*, 21 Atlantic Rep. 56; *Pierce v. Philadelphia*, 21 Atlantic Rep. 90; *Ins. Co. v. Railroad*, 19 Am. St. Rep. 858; *In re Goode*, 3 Mo. App. 226; *State ex rel. v. Lafayette*

*Co.*, 41.    (2) Said acts contain more than one subject. *Weaver v. Lapsley*, 43 Ala. 224; *Hind v. Rice*, 10 Bush, 523; *Railroad v. Board*, 9 Neb. 507; *People ex rel. v. Denehy*, 20 Mich. 349; *Murphy v. State*, 9 Lea, 374; *Philadelphia v. Railroad*, 21 Atlantic Rep. 982; *Davis v. Board*, 50 N. W. Rep. 862.    (3) Said acts are in conflict with section 53 of said article 4, of said constitution, in this: that it is a special law regulating the affairs of counties, townships, etc., creates new officers, refunds moneys legally paid into the treasury and grants special privileges.    *State ex rel. v. Herman*, 75 Mo. 346, and authorities cited; *State ex rel. v. Hammer*, 42 N. J. L. 435; *Van Ripper v. Parsons*, 4 N. J. L. 1; *Commonwealth v. Palton*, 88 Pa. St. 258; *State v. Tolle*, 71 Mo. 645; *Pell v. Mayor*, 40 N. J. L. 530; *Morrison v. Backert*, 112 Pa. St. 329.    (4) Said acts are in conflict with sections 46 and 47, of article 4, of said constitution.    *Deal v. Mississippi Co.*, 107 Mo. 464; *State ex rel. v. Walker*, 85 Mo. 41; *Webb v. Lafayette Co.*, 67 Mo. 353.    (5) A valid law cannot be enacted by amending an invalid and void law.    *Cooley v. Rushville*, 60 Ind. 330, and cases cited.

*Wash Adams* and *J. N. Southern* for respondents.

(1) The nullity of the act of 1893 must appear beyond a reasonable doubt before it will be declared unconstitutional.    *Ewing v. Hoblitzelle*, 85 Mo. 69; *Deal v. Mississippi Co.*, 107 Mo. 464.    (2) The act as amended in 1893 contains but one subject, viz., "dram-shop revenue and the distribution thereof" and this subject is clearly expressed in the title.    *City v. Tiefel*, 42 Mo. 592; *O'Leary v. Cook Co.*, 28 Ill. 534; *State v. Miller*, 45 Mo. 499; *State v. Matthews*, 44 Mo. 523; *City of Hannibal v. Marion Co.*, 69 Mo. 571; *State ex*

*rel. v. Mead*, 71 Mo. 266; *State v. Morgan*, 112 Mo. 212. (3) The act in question being a general and not a special law does not infringe section 53, article 4, of the constitution, which inhibits special laws regulating the affairs of counties. That this act is not a special law is shown by the following authorities: *State ex rel. v. Miller*, 100 Mo. 439; *State ex rel. v. Pond*, 93 Mo. 606; *Ex parte Swann*, 96 Mo. 44; *Rutherford v. Hamilton*, 97 Mo. 543. (4) Sections 46 and 47, art. 4, of the constitution have no application, because the proviso in section 7 of the act of 1893, relates to townships that have compromised their indebtedness and concerns only the license tax derived from saloons situated in such townships. (5) The rule that a void statute cannot be revived by amendment, invoked by appellants, has no relevancy here. The rule invoked by appellants applies only where the whole act is void, or where a new subject is introduced by amendment. *Eaton v. Walker*, 76 Mich. 579.

BURGESS, J.—This is a petition for injunction by plaintiffs, who are resident taxpayers of Jackson county, Missouri, against the defendants, Murphy, Henn and Latimer, who compose the county court of that county, to enjoin and restrain them from appropriating or expending, and from causing to be expended, two-thirds of all revenue for county purposes derived from the tax on dramshop licenses, as a special road fund, in compliance with section 7 of an act of the general assembly of the state of Missouri, entitled: "An act to increase the state dramshop license and to change the distribution of the county dramshop license by amending section 7 of 'an act entitled an act to regulate the sale of intoxicating liquors in original packages or otherwise,' approved March 20, 1891." Approved March 8, 1893. (Laws,

1893, p. 150.)

A demurrer to the petition was sustained by the court below, and judgment rendered for defendants thereon, from which judgment plaintiffs appealed to this court.

Plaintiffs' first contention is, that both of said acts are void, because in conflict with section 28, article 4, of the constitution of the state, which provides: "No bill * * * shall contain more than one subject, which shall be clearly expressed in its title." It is contended by counsel for plaintiffs that the words "or otherwise," as used in the title of the act of 1891, are of no significance, neither adding anything to, nor taking anything from, the scope and meaning of the title; that such words can be of no avail, and that they express nothing and have no force or effect · as a compliance with the constitutional requirement. The word "otherwise," as defined by Mr. Webster, means "in a different manner; in any other way or in any other ways; differently; contrarily." It would have been difficult to have made the title to the act more comprehensive in its scope and meaning by the use of any other words, or title. The words "or otherwise," as used in the title of the act, have a more definite, and a very different meaning from the words "or other purposes," as those words are generally used in the titles to legislative enactments. The latter words, when thus used, are laid out of consideration, and are not regarded as amounting to anything, but it is not so with the words "or otherwise."

Section 7, as it originally stood, reads as follows: "Upon every such license there shall be levied a tax, not less than $25, nor more than $200, for state purposes; not less than $250, nor more than $400, for county purposes, for every period of six months, the amount of tax, in every instance, to be determined by

the court granting the license. It shall be the duty of the county courts of the several counties of this state to cause *one-half* of all the revenue for county purposes, derived from the tax on dramshop license, to be set apart as a special road fund of such county, and cause the same to be divided among the various road districts in the county, in proportion to the number of miles of public road in each district. Said fund shall be expended on the main lines of road in each district, which lead to the most important towns in the county, in proportion to the public utility of such roads, and shall be expended under the supervision of the road overseer of each district, or some one appointed by the county court for that purpose, who shall be a resident taxpayer of the district, and shall give a like bond and shall receive the same *per diem* for his services as the road overseer of the district. Provided, that in counties having fifty thousand inhabitants or less, where such license tax is derived from saloons situated in any township that is indebted, and that have compromised, or that may hereafter compromise their indebtedness, then two-thirds of the county tax, so derived from said saloons, shall be applied by the county court to the payment of the interest and principal of such township indebtedness until such debt is fully paid.'' The only change made by the act of 1893 was in changing the amount of the minimum tax to be levied from $25 to $50; in providing that *two-thirds* instead of one-half, of all the revenue for county purposes, derived from the tax on dramshop licenses, be set apart as a special road fund; and in providing ''that the courts shall, in their discretion, have the power to use all or any part of said fund in one or more districts.'' It will thus be observed that there was no material change in the provision of the section now under consideration, by the amendment, which

would, in any manner, affect its validity.

The title of the act is very general and is broad and comprehensive enough to embrace within its meaning the sale of intoxicating liquors in any manner and to provide for the appropriation of the revenue arising therefrom in any way unless manifestly not within the meaning of the title to the act. The generality of title is no objection so long as it was not made to cover up legislation incongruous in itself, and which, by no fair construction, could be considered as having a necessary or proper connection with the title. ''It has accordingly been held that the title of 'an act to establish a police government for the city of Detroit', was not objectionable for its generality, and that all matters properly connected with the establishment and effeciency of such a government, including taxation for its support, and courts for the examination and trial of offenders, might constitutionally be included in the bill under this general title. Under any different ruling, it was said, 'the police government of a city could not be organized without a distinct act for each specific duty to be devolved upon it, and these could not be passed until a multitude of other statutes had taken the same duties from other officers before performing them. And these several statutes, fragmentary as they must necessarily be, would often fail of the intended object, from the inherent difficulty in expressing the legislative will when restricted to such narrow bounds.' '' Cooley's Constitutional Limitations, p. 172, and authorities cited; *Bright v. McCullough*, 27 Ind. 223; *Annapolis v. State*, 30 Md. 112; *State ex rel. v. Union*, 33 N. J. L. 350; *Humboldt County v. County Commissioners*, 6 Nev. 30; *State v. Silver*, 9 Nev. 227; *State ex rel. v. Ranson*, 73 Mo. 78. ''The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair

intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it." Cooley's Constitutional Limitations, pp. 172, 173; *St. Louis v. Tiefel*, 42 Mo. 578.

And no provision in a statute having natural connection with the subject expressed and not foreign to it, is to be deemed within the constitutional inhibition. *Johnson v. Higgins*, 3 Met. (Ky.) 566; *McReynolds v. Smallhouse*, 8 Bush, 447; *Annapolis v. State*, 30 Md. 112; *Tuttle v. Strout*, 7 Minn. 465; *Gunter v. Dale Co.*, 44 Ala. 639; *Ex parte Upshaw*, 45 Ala. 234; *State ex rel. v. Price*, 50 Ala. 568; *Commonwealth v. Drewry*, 15 Gratt. 1; *People ex rel. v. Hurlbut*, 24 Mich. 44; *State ex rel. v. Union*, 33 N. J. L. 350; *State v. Silver*, 9 Nev. 227; *Burke v. Monroe Co.*, 77 Ill. 610; *Blood v. Mercelliott*, 53 Penn. St. 391; *Commonwealth v. Green*, 58 Penn. St. 226; *Walker v. Dunham*, 17 Ind. 483.

But it is said that the words "in original packages" as used in the title of the act of 1891, are misleading, or rather, that they are restrictive in their scope, and that any sale of intoxicating liquors otherwise than in original packages was foreign to the intent of the legislature and a fraud upon its members. We think this position untenable. The title of the act shows clearly that its object and aim was to regulate the sale of intoxicating liquors, and whether in original packages or not, comes within its provisions. The fact that by the terms of section seven it is made the duty of the county court of the several counties of the state to cause two-thirds of all the revenue for county purposes derived from the tax on dram-shop licenses, to be set apart as a special road fund of such county, and to cause the same to be divided among the various

road districts in the county, in proportion to the number of miles of public road in each district, does not invalidate that section as the disposition of the tax thus collected in that way is germane to the title of the act.

In the case of *State ex rel. v. Mead*, 71 Mo. 266, it was said that "a provision in act 'concerning popular elections' authorizing the governor to fill vacancies in elective offices is germane to the general subject, and is valid." It is difficult to conjecture what would be more in harmony with the title and object of the act than to appropriate the proceeds arising from the tax on dram-shops in compliance with its provisions to some purpose beneficial to the general public as was done in this case. If there was any serious doubt about this matter, it seems from the uniform rulings of this court that it has never been its disposition to give this clause of the constitution a liberal construction without adhering very closely to the letter. There is nothing, then, in the statute that would make it obnoxious to the objections urged against it upon the ground that the provisions of this section are not embraced within the title. We must, therefore, rule this point against the plaintiffs.

Another contention is, that the act contains more than one subject and is in conflict with section 28 of the constitution *supra*. In the case of *Ewing v. Hoblitezelle*, 85 Mo. 70, it was held that a statute providing for the registration of voters, and to govern elections and to create the office of recorder of voters, contained but one subject and in that case it is said that, an act containing provisions relating to matters which are germane to the general subject is not obnoxious to the constitutional inhibition that "no bill shall contain more than one subject."

So it was held in the case of *State v. Bennett*, 102

Mo. 364, that the subject of private detectives was germane to the title of "an act creating a board of police commissioners and authorizing the appointment of a police force for the city of St. Louis," that the title of an act need not embrace every detail of legislation contained in it, and that all the constitution requires is, that the subject embraced in the act shall be fairly and naturally germane to that recited in the title.

In the case of *Commonwealth v. Depuy* (23 Atlantic Rep. 896), it was held by the supreme court of Pennsylvania under "an act for the taxation of dogs and the protection of sheep" which contained a provision "that all dogs in this commonwealth shall hereafter be personal property, and subject of larceny," that the provision as to larceny was germane to the title to the act and that the law was constitutional. It seems clear from the adjudications upon questions in every particular like the one now under consideration, that the contention of petitioners is not supported by the authorities, and that this point must also be ruled against them.

It is also insisted by counsel for plaintiffs that said acts are in conflict with section 53 of article 4 of the constitution; that it is a special law; that it regulates the affairs of townships; creates new offices; refunds moneys legally paid into the treasury and grants special privileges. In support of this contention, he relies upon *State ex rel. v. Herman* (75 Mo. 346); but in that case it was expressly said "that a statute which relates to persons or things, as a class, is a general law, while a statute which relates to particular persons or things of a class, is special." The statute now under consideration refers to all the road districts in all the counties in the state where there are dramshops, and to all townships that are indebted and that have compro-

mised, or that may hereafter compromise their indebtedness. It does not refer or have reference to any particular county, road district or township and is not local or special in its application. The act treats of but one subject, namely, the sale of intoxicating liquors. All the other provisions have a natural relation to, and direct connection with, that subject.

It was held in the case of *Rutherford v. Hamilton* (97 Mo. 543), that an act authorizing cities acting under special charters, and containing more than thirty thousand and less than fifty thousand inhabitants, to establish a system of sewerage and to construct, establish and keep in repair seven culverts and drains, is not a special law nor prohibited by the constitution. *Rutherford v. Heddens*, 82 Mo. 388.

It may be true, and doubtless there are counties in the state which have no dramshops, or that have no township indebtedness, and to which, for that reason, the act does not apply, but it is nevertheless general in its application because it does apply to all road districts and townships including those which have compromised or may thereafter compromise their indebtedness. It could not be more general in its application.

Another contention is, that section 7, as it was in the act of 1891, being unconstitutional and void, was not subject to amendment. This contention we also think untenable. There is a marked difference in regard to the amendment of an act which is void in its entirety and one that is only void in part, or when one section of an act is in conflict with the constitution of the state and the remaining sections are in harmony therewith. Where the entire act is void there is nothing to amend, while it is otherwise when there is only one section or a part of one section sought to be amended, as in the case at bar. In the latter case, the amendment may be made to any part of the section, or by

substituting an entire new section in lieu thereof, provided the act when amended does not embrace a purpose outside of its title, and inconsistent with the provisions remaining unrepealed.

If there was any reasonable doubt as to the constitutionality of the law before the amendatory act of 1893, the title of the act as then amended, is broad enough to embrace all the provisions of the section then amended as it now stands.

There does not seem to be any merit in the suggestion that the acts are in conflict with sections 46 and 47, or article 4 of the constitution.

In passing upon the constitutionality of the law now under consideration we must concede to the legislators who enacted it, the same sincerity of purpose; the same regard for their oaths to support the constitution of the state, and the same reverence for the constitution that we ourselves have, and unless we are satisfied beyond a reasonable doubt that the law is unconstitutional, it is our duty to uphold it, and in this case there does not exist in our minds any such doubt.

The judgment should be affirmed, and it is so ordered. All concur, except BARCLAY, J., absent.