THE STATE *ex rel.* DICKASON *et al.* v. COUNTY COURT OF MARION COUNTY *et al., Appellants.*

In Banc, May 21, 1895.

1. **Dramshop:** LICENSE: RAILROAD INDEBTEDNESS: STATUTE.    The proviso of section 4575 (R. S. 1889) does not pledge or give the state's credit, or county funds for the use of Mason township.

2. ——: ——: ——: ——: GENERAL LAW.    A law which applies to all persons who may come into like situation and circumstances is not special, within the meaning of the constitution.

3. ——: ——: ——: ——.    The proviso of section 4575 does not impose any new liability on the county or township; nor does it impair any obligation of the township, or deprive the county of its funds without due process of law, or of the means to maintain its government.

4. ——: ——: ——: ——: TOWNSHIP INDEBTEDNESS.    The term "township indebtedness," in section 4575, applies to debts created by funding bonds chargeable upon the property of an unorganized, territorial township.    The nature of such liability explained.

5. ——: ——: ——: ——.    Compromise bonds, duly issued under section 835, are a charge on the township property, whether the inception of the debt was valid or not.

6. ——: ——: ——: ——: CONSTITUTION.    The proviso in section 4575 (R. S. 1889) *held* constitutional as against the objection that it is retrospective in effect.

7. ——: ——: ——: ——.    The proviso of section 4575 is within the scope of the title of the act of which it is part.

8. **Statute:** TITLE: CONSTITUTION.    The title of an act is sufficient if it does not mislead as to its chief topic, and the minor features have a natural connection with the subject named in the title.

9. ——: ——: ——.    Mere generality in the title of an act will not vitiate it, if it is not misleading.

10. ——: ——: ——.    Amendments to sections of the revised statutes may be made by acts whose titles refer to those sections by numbers.

11. ———: SPECIAL LAW: CONSTITUTION. That an act is to apply only to counties having a stated population does not, of itself, render it special.

12. **Judicial Notice**: CENSUS: Judicial notice will be taken of the published official census of the United States for the purpose of determining the population of cities in Missouri.

13. **Constitution**: REENACTMENT OF PROVISION: CONSTRUCTION. Where a particular phrase of a constitution is construed by the supreme court, and then is reenacted in a later organic law, the construction is to be taken as also reenacted, unless a different intent appear somewhere in the new instrument.

14. **Statute, Construction of**: STARE DECISIS. Where a mode of legislation has been followed on the faith of rulings of the supreme court, and rights have been acquired thereunder, the court will follow those rulings on the maxim, *stare decisis*, without reopening the question of their correctness.

15. ———. A statute, fairly susceptible of a construction in harmony with the organic law, must be given that construction by the courts in order to sustain it.

16. ———: ———. It is the duty of the courts to sustain a legislative act, unless convinced that it infringes some particular provision of the organic law.

17. ———. The words of a statute should be construed in accordance with their plain and ordinary meaning.

18. ———. All parts of a law must be considered in getting at the full significance of any part of it.

*Appeal from Hannibal Court of Common Pleas.*—HON. REUBEN F. ROY, Judge.

AFFIRMED.

*Thomas H. Bacon* for appellants.

(1) Neither section 4575 nor its amendments alluded or applied to any railroad matter, or to any railroad aid bonds or indebtedness. (2) Neither section 4575 nor its amendments alluded to or applied to any unorganized township. Art. 9, sec. 8, const. Mo.

1875; ch. 162, art. 2, R. S. 1879; R. S. 1889, sec. 8429; Laws, 1883, March 31, 1883, p. 171. (3) Section 4575 and its amendments, so far as effective, operate prospectively only and do not apply to already outstanding indebtedness. *State, etc., v. Hays,* 52 Mo. 578; *State, etc., v. Ferguson,* 62 Mo. 77; *Riggs v. Goodrich,* 74 Mo. 108; *State v. Grant,* 79 Mo. 113, p. 118. (4) The constitution of 1875 precludes section 4575 and its amendments from expressing application of county funds to payment of railroad aid bonds or indebtedness or to any other purpose, neither a state nor a county purpose, because such subject so expressed would be a distinct and separate subject amending a distinct and separate law, and devoid of any expression thereof in the title of the act. Art. 4, sec. 28; *State, etc., v. Jackson,* 102 Mo. 531. (5) The constitution of 1875 precludes section 4575 and its amendments from expressing application of county funds to payment of railroad aid bonds or indebtedness, because such law would be a special law and a local law. Art. 4, sec. 53. (6) The constitution of 1875 precludes the devotion of the funds in issue to payment of township railroad aid bonds. Art. 10, sec. 12, "Annual Tax." The alleged indebtedness in issue first became valid in Missouri through enactments and proceedings first therein arising under the constitution of 1875 (*Webb v. Lafayette Co.,* 67 Mo. 353; *State v. Holladay,* 72 Mo. 499; *Dallas, etc., v. Merrill,* 77 Mo. 573; Laws, 1879, p. 48; Laws, 1887, p. 26) including popular election votes of two thirds of the voters of Mason township voting on proposition, and they are bound by the constitution of 1875, (*State, etc., v. Walker,* 85 Mo. 41, p. 46), and, under section 12 of article 10, these compromise or funding bonds could not be paid, except by an annual tax, (*State, etc., v. Shortridge,* 56 Mo. 126; *State, etc., v. Macon,* 68 Mo. 69), and under the scope

of section 4575, dramshop licensem oney is not a tax (*State, etc., v. Hudson*, 78 Mo. 304; *State, etc., v. Pond*, 93 Mo. 606, p. 623) and is not and never was, in Missouri, an annual tax, but an every "six months" levy. R. S. 1889, sec. 4575. *State, etc., v. Columbia*, 111 Mo. 365, p. 376; *Center, etc., v. St. Joseph*, 108 Mo. 304; *Barnard v. Knox Co.*, 105 Mo. 304. Appellants make the sharpest possible issue that this section 12 of article 10 governs these funding bonds. The federal constitution precludes the devotion of the funds in issue to payment of township railroad aid bonds. Art. 14, sec. 1, constitution of the United States; art. 15, sec. 2, constitution of the United States.

*W. M. Boulware* with *H. C. Heather*, Prosecuting Attorney, also for appellants.

(1) The proviso attached to section 7 of the dramshop law (Laws,1891, p. 128) has special and significant operation outside all relation to the sale of liquors and the licensing or taxing the same. According to plaintiff's contention, it introduces a new and pregnant matter—the matter of existing township railroad aid bonds and their payment—and by provision made in regard thereto amends the Township Aid act of 1868 by the repeal of sections 2, 3, and 4 and the substitution in their place of a new provision for payment. This subject is not expressed, and this operation is not suggested, by the title of the act, and the proviso is invalidated by article 4, section 28, constitution, 1875. (2) If the form of the words employed in the proviso render necessary the construction applying it to the then existing state of the case, then the proviso is a special act and falls within the inhibition of section 53 of article 4 of the constitution of 1875 and is inoperative and

void. The difference in the time of the accrual of a township indebtedness, as being before or after the passage of the law, furnishes no reasonable ground or necessity for distinction as to rights, and is not a permissible basis for legislative classification. *State ex rel. v. Miller*, 100 Mo. 439; *State v. Loomis*, 115 Mo. 307. (3) As applicable to the bonds in question the general assembly did not have the power to give to said proviso the operative force of law. *First.* If said proviso should be considered as relating back to, and forming part of, the act of 1868 (which is not possible), then the fact that no election in regard thereto was held in the county of Marion will bring the proviso clearly within the inhibition of section 14 of article 11 of the constitution of 1865. From this conclusion there is no escape. *State ex rel. v. Walker*, 85 Mo. 45; *Webb v. Lafayette Co.*, 67 Mo. 353. *Second.* The proviso diverts county public funds and applies them to a purpose which, as to the county, is individual and private. This is true, whether the bonds be considered to represent an indebtedness of Mason township as a quasi municipal body, or as representing an indebtedness of taxpayers or a charge upon the lands therein. The power so to do did not exist under either of the former constitutions of the state. (4) By the proviso, the contract involved in the act of 1868 and expressed by the bonds, is subverted; after full performance on one part, a new recourse for payment is instituted on the other part by the creation of a new obligation and the substitution of a new paymaster, and vested rights of property are abrogated and either transferred or destroyed. A statute operating to affect an existing contract or divest an existing property right, must so do, either by declaring the rule of right applicable to a preexisting state of facts, or by the destruction of the right itself. In the former case the function exercised

is judicial, in the latter the act is simply an arbitrary edict—a wanton expression of despotic power. In neither is it a law. The principle of limitations on legislative power as arising from the source, nature, and office of government, furnishes an all sufficient and ever abiding guaranty of the liberty and property of the citizen. It can not with safety be either set aside or obscured. As recognizing the principle the court is cited to the following authorities: Sec. 32, art. 2, const. 1875; *Deal v. Mississippi Co.*, 107 Mo. 464; *St. Charles v. Nolle*, 51 Mo. 124; *Ass'n v. Topeka*, 2 Cent. Law. Jour. 156; Cooley, Constitutional Limitations, [6 Ed.] 484; *State v. Loomis*, 115 Mo. 307; *Gebhow v. Railroad*, 17 Blatch. Cir. Ct. 416; *Powell v. Sims,* 5 W. Va. 1; *University v. Williams*, 9 Gill & Johns. 365; *People v. Marx*, 99 N. Y. 377; s. c., 52 Am. Rep. 34; *Hams v. McClaws*, 1 Bay (S. C.) 98. (5) The proviso falls under the expressed inhibitions of section 15 of article 2 of constitution of 1875. *First*, it impairs the obligation of the contract involved in section 2 of the aid act of 1868 and expressed in the bonds and, *second*, it is retrospective in its operation, and affects property rights arising and existing under section 4 of said act. The previous discussion and citation are of significance as bearing upon this point. (6) The proviso is clearly within the inhibition of section 19 of article 12 of the constitution, and also within section 10 of article 1 of the constitution of the United States.

*Geo. A. Mahan* and *F. L. Schofield* for respondents.

(1) Although the act of 1868, under which the original township bonds were issued, has been declared unconstitutional (*Webb v. Lafayette County*, 67 Mo. 353; *State ex rel. v. Walker*, 85 Mo. 41), still it will hardly be disputed that the bonds now in question are

compromise funding bonds issued under valid acts, and therefore represent a valid subsisting indebtedness of Mason township. Sec. 4575 is founded on sec. 4290 R. S. 1879, and sec. 835 R. S. 1889; *State ex rel. v. Railroad*, 101 Mo. 136. (2) But appellants urge that "Neither section 4575 nor its amendments alluded or applied to any railroad matter, or to any railroad aid bonds or indebtedness." The statute itself, we think, sufficiently meets this objection. The language of the statute is "any township that is indebted." It is a mere refinement to argue that an unorganized township can not have an indebtedness, that these railroad compromise funding bonds are not a debt but a mere charge. The legislature manifestly used the words "indebted" and "indebtedness," having in mind this very character of obligation, it being the only obligation for which an unorganized township could be bound. (3) Again, it is contended that "section 4575 and its amendments, so far as effective, operate prospectively only, and do not apply to already outstanding indebtedness." On the contrary we submit that the section, by its very terms, is limited to existing outstanding indebtedness. (4) It is maintained by appellants fourthly that the law in question is violative of artcle 4, section 28, of the constitution, which provides that "no bill * * * shall contain more than one subject, which shall be clearly expressed in the title." This contention has very recently been adjudged against appellants in a case where this section, under the same challenge, passed under review of this court. *Lynch v. Murphy*, 119 Mo. 163; *St. Louis v. Tiefel*, 42 Mo. 578; *St. Louis v. Green*, 7 Mo. App. 468; s. c., 70 Mo. 562; *State ex rel. v. Ransom*, 73 Mo. 78; *Hannibal v. Marion Co.*, 69 Mo. 571; *State ex rel. v. Dolan*, 93 Mo. 467; *State ex rel. v. Mead*, 71 Mo. 266; *State v. Morgan*, 112

Mo. 202; *State ex rel. v. Miller*, 100 Mo. 439; *State v. Bennett*, 102 Mo. 356. (5) It is next contended by appellants that the act in question is in contravention of article 4, section 53, of constitution, forbidding local legislation. This court has, in the case first above cited, expressly held to the contrary. *Lynch v. Murphy*, 24 S. W. Rep. 774; *State ex rel. v. Hughes*, 104 Mo. 459; *State ex rel. v. Miller*, 100 Mo. 439; *Rutherford v. Heddens*, 82 Mo. 388; *State ex rel. v. Pond*, 93 Mo. 606; *Rutherford v. Hamilton*, 97 Mo. 543; *State ex rel. v. Jackson Co.*, 89 Mo. 237; *Hume v. Railroad*, 82 Mo. 230; *State v. Hays*, 88 Mo. 347; *Phillips v. Railroad*, 86 Mo. 540. (6) Appellants contend that the appropriation of the fund in question to the payment of the Mason township railroad compromised indebtedness would in effect be the lending of its credit by Marion county or the granting of its public money in aid of or to an association of individuals and, therefore, violative of article 4, section 47, of the constitution. This position is unsound. 45 Mo. 465; 50 Mo. 227; 57 Ill. 63; *Commissioners v. Lucas*, 93 U. S. 108; *State ex rel. v. St. Louis Co. Court*, 34 Mo. 546; *Hamilton v. St. Louis Co. Court*, 15 Mo. 3. (7) It is submitted that the several other objections enumerated in appellants' brief and the authorities cited in support of the same, have no application to the case at bar. (8) The legislature has full power to direct what shall be done with all or any part of the dramshop license tax levied for county purposes; and in applying two thirds of such license tax to payment of interest and principal of township indebtedness it acted within constitutional bounds. *Hannibal v. Marion Co.*, 69 Mo. 571; *State ex rel. v. St. Louis Co. Court*, 34 Mo. 546; *In matter of Apportionment of Taxes*, 78 Mo. 596; *School District v. Weber*, 75 Mo. 558; *State ex rel. v. Holladay*, 70 Mo. 137; *School District v. Rhoads*, 81 Mo. 473. (9) The appli-

cation of the funds thus incidentally acquired for the benefit of the locality where the business is permitted is certainly not only not in conflict with the several clauses of the constitution, as contended by appellants, but it is in exact harmony with express judicial views. *State ex rel. v. Pond*, 93 Mo. 623; 78 Mo. 304; *Austin v. State*, 10 Mo. 591; *State ex rel. v. Holt Co. Court*, 39 Mo. 521; *State ex rel. v. Hudson*, 13 Mo. App. 61; *State ex rel. v. Owsley*, 26 S. W. Rep. 659. (10) The proviso in 4575 controls. If it be not exercised the law shall not operate. No license tax could be collected from saloons in Mason township. Sutherland on Statutory Constitution, sec. 222; Potter's Dwar., p. 118; 10 Peters, 471. (11) Mode of raising money to pay the debts can be changed or added to without violating obligations of contract. 52 Mo. 354.

### DIVISION ONE.

BARCLAY, J.—This is an appeal from a judgment of the court of common pleas of Hannibal, awarding a mandamus to the judges of the county court of Marion county.

The real issue involved is as to the constitutionality of a certain statute, quoted later. It is unnecessary to go into the particulars of the formal proceedings, except very shortly.

The relators are citizens, taxpayers and owners of real property in the city of Hannibal, in Mason township, Marion county. The defendants are the county court of the county and its judges.

The object of the writ is to require defendants, as the county court, to apply particular funds in the treasury of the county toward the payment of certain indebtedness, chargeable upon Mason township, in the form of bonds, issued in 1883 in compromise of earlier

alleged obligations (incurred in 1869) upon a subscription to the capital stock of the Hannibal & Central Missouri railroad company.

The fund sought to be thus applied (over $7,000 in amount) is the two thirds part of the dramshop license tax collected by the county court upon licenses to dramshop keepers in Mason township for the period of six months, ending July 4, 1893.

The relators depend upon the terms of the proviso contained in section 4575 (R. S. 1889).

The defendants insist that the proviso is in conflict with the organic law; and hence they have declined to obey it. Thus the issue is made up. We shall deal with the substance of it, making no further reference to the pleadings by which it is developed than to mention that the trial court sustained a demurrer to defendants' return to the alternative writ; and, upon their refusal to plead further, the writ was made peremptory.

The defendants then appealed, after taking the formal steps for a review.

The section wherein the proviso in question appears in the Revised Statutes of 1889 has been since amended (Laws, 1891, p. 129, sec. 7, and Laws 1893, p. 151, sec. 7); but the proviso has remained unchanged. So, for our present purposes, we refer to the section as contained in the last general statutes, viz.:

"Sec. 4575. *License tax.*—Upon every such license there shall be levied a tax not less than $25 nor more than $200 for state purposes, not less than $250 nor more than $400 for county purposes, for every period of six months, the amount of tax in every instance to be determined by the court granting the license. It shall be the duty of the county courts of the several counties of this state to cause one half of all the revenue for county purposes, derived from the tax on dramshop licenses, to be set apart as a special road fund of

such county, and cause the same to be divided among the various road districts in the county, in proportion to the number of miles of public road in each district. Said fund shall be expended on the main lines of road in each district, which lead to the most important towns in the county, in proportion to the public utility of such roads, and shall be expended under the supervision of the road overseer of each district, or someone appointed by the county court for that purpose, who shall be a resident taxpayer of the district, and shall give a like bond, and shall receive the same per diem for his services as the road overseer of the district: *Provided*, that in counties having fifty thousand inhabitants or less, where such license tax is derived from saloons situated in any township that is indebted, and that have compromised, or that may hereafter compromise, their indebtedness, then two thirds of the county tax so derived from said saloons shall be applied by the county court to the payment of the interest and principal of such township indebtedness until such debt is fully paid.   (R. S. 1879, sec. 5441, amended, Laws, 1883, p. 87, amended, Laws, 1887, pp. 178, 179—*e.*)"

Under repeated rulings of the supreme court it should be considered settled that judicial notice will be taken of the published official census of the United States, for the purpose of determining the population of cities of Missouri.

The trial court was, therefore, right in this case in ruling that Marion county came within the class of counties mentioned in the proviso, for the last United States census shows, and all parties to the cause concede, that the inhabitants of that county do not exceed fifty thousand in number.

1.   The first objection is that the proviso does not apply to any railroad aid bonds, or authorize the application of funds, raised from dramshop licenses, toward

the discharge of any indebtedness evidenced by such bonds.

We shall not attempt to fully state the defendants' contention on this point; but will merely announce our view of it.

The township of Mason is not an organized township. It is only a territorial subdivision of the county. Yet, under the positive law of Missouri, particularly under the statutes (R. S. 1889, secs. 835 and following) authorizing compromises of township obligations, incurred (or claimed to have been incurred) under former laws, it is very clear that funding bonds issued to perfect those compromises were regarded by the lawmakers as township indebtedness. Strictly speaking, such indebtedness, in its origin, was merely a charge upon the property in the township. The township constituted a sort of benefit district to which the indebtedness attached by operation of law.

Whether the original steps which gave rise to the liability of the township in question were valid or not, we need not inquire, since the compromise bonds, on the conceded facts, are a legitimate charge against the township property under the decision rendered by Judge BLACK for the court in *State ex rel. Trammel v. Hannibal, etc., Railroad Co.* (1890), 101 Mo. 136 (13 S. W. Rep. 505.)

The words of the proviso under review are to be read in their plain or ordinary and usual meaning (R. S. 1889, sec. 6570). In the plain and ordinary sense, no less than in the sense plainly implied by the terms of the statute touching compromises of old bonds, "township indebtedness," when used with such context as here appears, should be held to include the obligations for which the township property is chargeable under the funding act (R. S. 1889, sec. 835).

2.   The next objection is that section 4575 can not be made to apply to existing indebtedness, under the plain command of the constitution forbidding legislation retrospective in its operation (Art. 2, sec. 15.)

The effect of the proviso itself is not retrospective. It provides for the collection of a license tax on dramshops from the time of its enactment.   It authorizes the creation of a fund to be applied to certain township indebtedness, but it does not impair any existing vested rights, as will be shown more clearly further on.

The particular phrase of the constitution invoked on this point is not new in the present organic law.   It formed a part of the constitution of 1820 (art. 13, sec. 17), and has been construed adversely to the contention of the appellants in *State ex rel. v. St. Louis County Court* (1864), 34 Mo. 546.   Since that construction the constitution has been twice revised, and in each instance the same language on this point has been retained.

It is, hence, our duty to hold that the construction given by the court was re-enacted with the old language, unless there is something in other parts of the document to indicate a change of meaning.

We have not been referred to anything indicating such a change on the particular point of this inquiry as to the retrospective effect of the law.   So we hold that objection untenable.

3.   The defendants then insist that the proviso is not within the fair scope of the title of the statute in which it appears, and hence falls under the ban of section 28 of article 4 of the organic law, touching the proper titles of acts of legislation.

The title of the act (Sess. Acts, 1887, p. 179) in which the proviso first appears is this: "An act to amend section three of an act entitled 'an act to amend sections 5438, 5440, 5442, 5456, 5464, and

to repeal section 5462 of chapter 98, entitled "of dramshops,' " as approved March 24, 1883.''

The act which that of 1887 amended is found in the session acts of 1883 (p. 86); and the sections mentioned in the title of the amended act are those of the revised statutes of 1879 bearing the numbers specified.

The acts of 1883 and 1887 were brought into the revision of 1889 by the arrangement of the sections as shown in chapter 56 of that revision. But that chapter was not otherwise revised, no enactment on the subject having been passed as a law at that revising session.

The proviso has also appeared in later amendments of the dramshop law in 1891 (Laws, 1891, p. 128), and in 1893 (Laws, 1893, p. 150).

The title of the former of these acts (that of 1891) is, "An act to regulate the sale of intoxicating liquors in the original packages or otherwise."

The title of the act of 1893 is as follows: "An act to increase the state dramshop license, and to change the distribution of the county dramshop license by amending section 7 of an act entitled" (then follows the title of the act of 1891) "approved, April 20, 1891."

The question is whether the proviso is to be discarded for want of the appropriate label which the constitution demands.

The practice of legislation by reference to sections of the authorized version of the statutes (without other description of the subject of the amending act) has been followed quite generally in this state on the faith of early rulings of the supreme court approving such methods of lawmaking. So much has been done, and so many rights have been acquired, on the basis of those rulings, that we hold that the question of their correctness ought not to be reopened at this day. We

adhere to them and follow them as an expression of the settled law of Missouri.  *St. Louis v. Tiefel* (1868), 42 Mo. 578; *State v. Mathews* (1869), 44 Mo. 523; *State ex rel. v. Ranson* (1880), 73 Mo. 78.

If any one of the various acts containing the proviso is valid, in respect of the criticism under discussion, that enactment can not be pronounced void. For if any of the later acts were held invalid on that account, the elder valid law would still remain in force.

The revised statutes of 1879 contained a chapter entitled "of dramshops." That chapter was amended by the acts of 1883 and 1887, which practically revised that chapter in many important particulars.

That mode of amendment is sanctioned by the cases above cited. It amounted in effect to placing the proviso in one of the sections of the revision of 1879, under the title "of dramshops," where it likewise remained in the arrangement of the statutes by the revising committee in 1889.

The raising of revenue by a charge for licenses to keep dramshops is a legitimate and proper incident to the regulation of the sale of intoxicating liquors; and provisions of law for the application of revenue so obtained are reasonably appropriate to any scheme for raising such revenue.

The constitutional mandate in regard to the title of a statute does not require a table of contents as a caption to a law. It is sufficient if the title does not mislead as to the chief topic of the act, and that the minor features of it have a reasonable and natural connection with the subject named in the title. *State ex rel. v. Miller* (1890), 100 Mo. 439 (13 S. W. Rep. 677); *Lynch v. Murphy* (1893), 119 Mo. 163 (24 S. W. Rep. 774.)

Mere generality in the title will not vitiate an act of the general assembly, unless the title is of such a nature

as to compel the conviction that it was designed to mislead as to the subject dealt with. We hold the title of the act of 1887 valid. There is no need to go beyond that ruling in the case in hand.

4. Another objection, going to the form in which the proviso in question has been framed, is that it violates the constitutional prohibition of special legislation. The fact that the proviso applies only to counties of a certain population is not of itself enough to stamp it as special in view of the rulings that have been made on that subject in the early years of the present constitution. *State ex rel. v. Tolle* (1880), 71 Mo. 645; *State ex rel. v. Herrmann* (1882), 75 Mo. 340; *State ex rel. v. Miller* (1890), 100 Mo. 439 (13 S. W. Rep. 677.)

Whatever the present members of the court might hold on that proposition, were it an original one, is needless to state. We feel ourselves in duty bound to follow the construction that has been made by our predecessors in respect of the proper forms of legislation, and upon which construction the legislative department has ever since been acting.

It certainly is a point calling for a firm application of the doctrine of stare decisis.

We think a fair reading of the proviso permits the interpretation that it is designed to apply to counties that may have the stated population at any time after the statute takes effect.

That idea is not expressed in so many words; but, as the law is of continuing operation, and employs the present tense—"having" such a population—and a prospective effect is to be given to a statute, where its language does not exclude that construction, we consider that the interpretation above indicated is reasonable, and should be accepted to sustain the action of the lawmaking department.

Where a statute is fairly susceptible of a construc-

tion in harmony with the constitution that construction should be adopted, in obedience to several canons for the guidance of courts in dealing with this subject.

Leaving the question of classification by population, we hold that the law is not a special one in other respects within the rules that have been heretofore declared.

It has been expressly held that an act which applies to, and embraces, all persons who are, or who may come into like situations and circumstances, is not special, within the meaning of the constitution. *Humes v. Railroad* (1884), 82 Mo. 221; *Burkholder v. Union Trust Co.* (1884), 82 Mo. 572; *Steele v. Railroad* (1884), 84 Mo. 57; *State ex rel. v. Miller* (1890), 100 Mo. 439 (13 S. W. Rep. 677.)

5. It is further claimed that the proviso violates certain prohibitory commands of the state charter in regard to the disposition of public funds. In their bearing on the case those commands may properly be considered together. The substance of the contention as to them is that the proviso of section 4575 purports to divert funds raised for county purposes to another object, namely, the relief of the township from its own peculiar indebtedness, and that such diversion of the county revenue is forbidden by the constitution.

The particular passages of the latter which are relied upon by defendants in this branch of the case are sections 45, 46 and 47 of article 4.

As to section 45, it may be disposed of by saying that, in our opinion, the proviso can not reasonably be held either to directly give, lend or pledge the state credit for the benefit of the township, or to authorize any such use of the state's credit.

As to sections 46 and 47, the argument for the defendants rests entirely on the erroneous premise that the funds realized from licenses of dramshops in Mason

township are funds  devoted to, or intended by law for, county purposes.

The county court is authorized to issue the licenses; and upon every such license there  is to be levied a tax for state purposes, and another tax which is described as a "county tax," or "for county purposes."  But with those words we see a context which qualifies their meaning so as to show a clear legislative intent to apply part of the funds, so raised, to township purposes. All parts of a law must be considered in getting at the full significance of any part of it.

The county acts in this matter as the representative of the unorganized territorial township in order that the benefits (authorized to flow from the issue of those licenses for dramshops in the township) may be secured to the township.  As to that portion of the fund, the county officers act on behalf of the township.

Only with those qualifications annexed does the fund (raised from the saloons in the township) come into the custody of the county officers.  The unorganized townships have no other machinery, through which to secure such benefits, than the county officers.

The county occupied a somewhat similar relation to the school funds mentioned in the case of *Ray County v. Bentley* (1872), 49 Mo. 236, wherein Judge WAGNER, for the whole court declared (p. 242):

"The county is not the owner of the fund; the title is simply vested in it as trustee, for convenience, to carry out the policy devised by the lawmaking power for, the appropriation and distribution of the fund.  In the care, management and control of the fund, the county court acts purely in an administrative capacity, not as the agent of the county, but in the performance of a duty specifically devolved upon it by the laws of the state."

The authority to collect a license tax for the benefit

of the county or township is no "grant of public money or thing of value," such as is intended by the terms of section 46 of article 4 of the constitution.

That part of the fund, flowing from the source indicated, which is assigned by the proviso to the reduction of township indebtedness, never becomes a part of the funds of the county, except in its capacity as the governmental agent for the township.

In *State ex rel. Trammel v. Hannibal, etc., Railroad Co.* (1890), 101 Mo. 136 (13 S. W. Rep. 505), it was distinctly ruled, that a tax, levied for township purposes through the agency of the county authorities, was not a county tax.

It is, hence, a grave mistake to suppose that the priviso has the effect to divert any part of the legitimate county revenue to the uses of a township as such. It merely contemplates that the usual machinery of the county government be utilized for the imposition and collection of a license tax upon the dramshops in Mason township to be applied, in part, toward meeting the indebtedness of that township.

So viewed, we think there is nothing in the proviso obnoxious to the clauses of the constitution last above cited.

And, in this connection, we may remark that the closing lines of section 6 of article 9 of that instrument appear designed to set at rest any doubt there might be touching the contention of defendants discussed in this paragraph; or, at least, those lines show that the constitution intended no such construction of its other provisions as the defendants attempt, with so much learning and ingenuity, to maintain in this case.

6. It is next suggested that the proviso conflicts with section 19 of article 12, which forbids any law for the benefit of a railroad or other corporation, or individual or association of individuals, "retrospective in

its operation, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past.''

We consider that the law here in question has no such effect. In the first place it is not retrospective, under the rulings on that point already cited. In the next, it imposes no new liability on the county or township. Authorizing the imposition of such a license tax on dramshops is not the creation of any new liability for past transactions. Its effect is rather to lighten the existing burden of the township than to impose any new one.

7. There are some minor objections to the proviso, as that it is said to impair the obligation of the contract of indebtedness; that it deprives the county of its property without due process of law; and that its necessary effect will be to strip Marion county of adequate means to maintain the county government.

We do not consider that these objections require special discussion. The announcement of principles, which has been already made herein, will indicate why we now hold the latter objections untenable.

The brilliant and interesting argument that has been submitted in this case has not convinced us that any particular provision of the organic law has been infringed by the proviso complained of. It is our duty to sustain the legislation, unless it can be plainly shown to clash with some command or prohibition of the higher law which the people have laid down in their constitutions.

Unless such clash or conflict is manifest, we are bound to assume that the representatives of the people have not exceeded the powers of government confided to them.

In the present instance we are not satisfied that

the organic law has been violated; but think that, under the precedents in this state, the legislature, in enacting the proviso, did not pass beyond the domain of its constitutional authority.

The responsibility for the wisdom and policy of the enactment rests with the lawmaking body.

Our learned brother on the circuit bench came to the same conclusion. We affirm the judgment. BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.

### IN BANC.

PER CURIAM.—The foregoing opinion of BARCLAY, J., in division number one, is adopted as the opinion of the court in Banc, and in accordance therewith the judgment of the circuit court is affirmed, all the judges concurring.