CITY OF ST. LOUIS, Plaintiff in Error, *v.* HENRY TIEFEL, Defendant in Error.

1.  *Water Commissioners — Water Licenses—Actions touching—Constitution— Statute — Subject Matter, how far must be embraced in title — Construction of § 32, art. 4, Const. Mo.*—An act entitled "An act amendatory of an act to enable the city of St. Louis to procure a supply of wholesome water, approved March 13, 1867" (Adj. Sess. Acts Mo. 1868, p. 291), after authorizing the Board of Water Commissioners to require owners, etc., of buildings to take out water-licenses, goes on to provide, in substance, that parties who fail or neglect to comply with the provisions of the section shall be subject to the same penalties as the parties who use the water of the city and fail or refuse to pay the rate or assessment for the same; *provided, however,* that the Board of Health shall, in the first instance, declare by resolution that in its judgment the use of water from the city water-works in the houses of such parties is demanded as a sanitary measure for the preservation of the health of the inmates: *Held,* that the section, although it confers extraordinary powers, relates clearly to the subject intimated in the title, and is entirely congruous and connected with it, and is valid under section 32 of article 4 of the constitution of this State. The only intention of that section of the constitution was to prevent the conjoining in the same act of incongruous matters, and of subjects having no legitimate connection or relation to each other; and if the title of an original act is sufficient to embrace the provisions contained in an amendatory act, it will be good, and it need not be inquired whether the title of the amendatory act would of itself be sufficient. It is plain, however, that the use of the words "other purposes," which have been extensively used in the title to acts to cover any and every thing, whether connected with the main question indicated by the title or not, can no longer be of any avail.

2.  *Police Court — Jurisdiction — Actions touching Water Licenses.*—The St. Louis Police Court, being by the act establishing it limited to cases in which a justice of the peace would have had jurisdiction, or to those for violation of a city ordinance, or to cases of assault and battery, can have no jurisdiction over a complaint for violation of an act of the legislature in failing to take out a water-license; and, upon appeal to the Criminal Court, the case, upon motion, was properly dismissed for want of jurisdiction.

*Error to St. Louis Criminal Court.*

*H. A. Clover,* for plaintiff in error.

I. The two acts, the original and amendatory, ought to be construed together as making but one law; and looking at the two acts as one act, and regarding the provision of the second section of the amendatory act, no one can assert that the provisions of this section are not germain to the general object of the

City of St. Louis v. Tiefel.

bill — the enabling the city of St. Louis to procure a supply of wholesome water.

If a provision of a particular section of a law is within the general scope, nature, and object of the law, then it is sufficient; and no constitutional objection lies that the nature of the particular provision is not expressed in the title of the bill. Any other rule than this would make the title of a bill express not only the "subject" of the bill, but all the details, minutiæ, and machinery of the bill, making the title to the act as full and specific as the act itself. The other sections of this law all plainly and legitimately relate to the one subject. Look at the original law in the light of this objection. Its general title is as above quoted; yet the first section creates a quasi corporation, charged with important and extensive duties, and vested with extraordinary powers. Nothing hereof is expressed in the title. The seventh section abolishes the offices of superintendent of water-works and register of water-rates as formerly existing, and takes from the city all control of water-works existing for a long while previous, and vests such control in this new corporation. Nothing hereof is expressed in the title of the act. Another section makes particular provision for the taking and condemnation for public use of private property; provision is made for the issue of $3,500,000 of gold bonds. Nothing of this appears in the title, and so in very much of the matters of the act; yet no one would seriously argue that this law in any of its parts was inoperative and void by reason of this constitutional provision. The general scope, nature, and object of this law is sufficiently well-stated in the title to meet any constitutional objection, and it does not aid the defendant's argument that this provision is found in another and an amendatory act — the acts being construed as one act.

It is argued by counsel that "an act which compels A. to pay for a water-license, whether he used the water or not, cannot be viewed as an act enabling B. to procure a supply of wholesome water." But an act which compels A. and B., property-owners, to use water when it is offered them, most assuredly is an act enabling the city of which they are inhabitants to procure a supply of pure and wholesome water if the water be pure and

wholesome. It is idle to call this measure an arbitrary tax, or unreasonable, harsh, or unnecessary. The first portion of the section undoubtedly is a part of a general plan for enabling the city of St. Louis to procure a supply of pure and wholesome water, and the proviso is added that the section shall not have force or effect unless the board of health shall do something. This is merely a proviso competent for the legislature to make, and there could be no necessity or propriety in expressing the subject of a proviso in the title to a bill.

II. The act is assailed on the ground that the law is void as being against common right. In an act to provide the city of Brooklyn with water, passed April 16, 1859, the eighteenth section reads as follows : * * * " Such rents (water-rents for the supply of water) shall be collected from the owners and occupants of all such buildings, respectively, which shall be situated upon lots adjoining any street, avenue, lane, or court in said city, in which the distributing pipes have been laid, and from which they can be supplied with water, whether the water shall be used or not ; such regular rates, together with all interest that may accrue thereon, shall be a lien upon such houses and lots respectively." So in section 24 : " The said water-board shall, in every year, by resolution, fix the price, which shall be assessed upon every vacant lot situated upon any street, lane, alley, or court, etc., etc." Reference is made to this law simply to show that the act of March 23, 1868, is not an extraordinary law or peculiar to the legislature of this State—not to prove its constitutionality. Every act, and there are very many such, for the laying of water-pipe in cities, is upon the same principle of legislation. The very act under consideration, that of March 13, 1867, being the act to enable the city of St. Louis to procure a supply of pure and wholesome water, is based upon the same principle. The twenty-third section provides that whenever the city council shall, by a two-third vote, declare the laying of water-pipe to be necessary, the said board of water commissioners shall cause the same to be laid, and the cost of laying all such pipe shall be apportioned among the owners of property on such street, according to the fronting of their lots thereon, and be levied as a special tax, etc.

Now, the principle of this legislation is precisely similar to that condemned by the St. Louis Criminal Court. A man, owner of property on a street, may not choose to use water from the public works; he may not like it; it may not agree with him; he has no necessity for it. Wherefore should he be compelled to pay for water-pipe laid in front of his ground, the water from which he will not use? He does not want it. Why should he be compelled to pay for the laying of the pipe to the lot of his neighbor who does want it? This is supposing he has a house with cisterns and wells supplying him with wholesome water. But if the lot is vacant, much greater is the injustice which the legislature imposes upon him; for if, as owner, he is unable to build, of what possible use can the pipe be to his vacant lot, and why should he be compelled to pay a proportionate share of the cost thereof when, in any event, he never intends to use the pipe or water? This is a mode, and a very proper mode, adopted by the law-making power to compel every landed proprietor to pay a due share of the burden or debt created by a needed and great public improvement. It should be remembered that there exists an absolute necessity for water in crowded cities, as a matter of comfort and health, indispensable in certain seasons to the well-being of the community. This necessity, being provided for, has to be paid for. While men planted a city by the side of the Mississippi river, nature did not thereafter carry this water into all the streets and avenues of that city, extending over an area of many miles; and yet this is an important essential of the health of the city. The legislature says it shall be brought so as to be capable of being used in every house where the same is demanded, as a sanitary measure, or it shall be paid for as if brought in and used.

III. It is contended that the Police Court had no jurisdiction over this cause or proceeding. This leads us to an examination of the meaning of the language of the second section, to-wit: "The parties who fail or neglect to comply with the provisions of this section shall be subject to the same penalties as parties who use the water of the city and fail or refuse to pay the rate or assessment for the same." We are immediately referred hereby to other legislation to find out what are the penalties which parties

are subject to who use the water of the city and fail or refuse to pay the rate or assessment for the same. Referring to the city ordinances we find that " whoever shall, himself, or by any of his family, or any of his agents or servants, use the water from any part of the water-works, without license, shall forfeit and pay," etc. Now, it is impossible to say that the legislature may not vest the police justice of the city of St. Louis with jurisdiction over the failure or neglect of parties to comply with the provisions of this section ; and if so, and if the legislature has vested this jurisdiction by this act with the police justice, it is idle to look further—as to the city charter of the city of St. Louis—for this grant of jurisdiction, for the act itself gives the jurisdiction. It is claimed that the act of March 23/ 1868, is a penal statute, and must receive a strict construction. But we reply, it is the duty of the courts to uphold, wherever possible, the legislation of the land — *ut res magis valeat quam pereat*. Does the act contemplate after or subsequent action on the part of the city council before it could have effect? The reasonable, sensible, and proper interpretation of this act is this : Parties who fail or neglect to comply with the provisions of this section shall be subject to a penalty. That penalty is the same as is imposed upon parties who use the water of the city and fail or refuse to pay the rate or assessment ; and, per consequence, and by indispensably necessary construction, through the same channel, by the same forum, in the same court. If the legislature had merely said " and suable or collectable in the same manner," or " to be enforced in the same manner or through the same jurisdiction," there could have been no doubt ; nor is there any more room for doubt on a fair and reasonable construction of the law as it is. The case of The Town of Fishkill v. The Fishkill and Beekman Plank Road Company, 22 Barb. 634, decides nothing as to our own act.

*Krum, Decker & Krum*, for defendant in error.

The court below properly dismissed the case, if there was no jurisdiction either of the subject matter or over the person of defendant in the Police Court. (Webb v. Tweedie *et al.*, 30 Mo. 488.)

City of St. Louis v. Tiefel.

I. There was no jurisdiction in the Police Court over the subject matter of the complaint. The jurisdiction of this court is fixed by statute. "The police justice" * * * "shall have the same jurisdiction as a justice of the peace, within the limits of the city, in all State cases; he shall have jurisdiction over all cases arising under any ordinance of the city, and in all cases of assault and battery arising within said city, subject to appeal," etc. (Sess. Acts 1867, p. 69, § 18.) It is an inferior court, and "courts of inferior jurisdiction cannot go beyond the authority conferred on them by statute. They can assume no power by implication, but must keep within the powers expressly given them, and if they go beyond them their acts are void." (Cow. Tr. § 650, with numerous citations.) "And the ground of their jurisdiction must appear upon the face of their proceedings." (State v. Metzger, 26 Mo. 65, and authorities there cited.) 1. The case at bar is not one arising under any city ordinance. On the contary, it alleges "the violation of an act of the General Assembly of the State of Missouri," for which the penalty is sought to be recovered. 2. As this is no case of assault and battery, then: 3, if the Police Court had jurisdiction at all, it must be by virtue of the power delegated to it in common with justices of the peace in State cases. But the jurisdiction of justices of the peace in State cases extends only (a.) To cases of misdemeanor punishable by fine not exceeding one hundred dollars. (Adj. Sess. Acts 1868, p. 82, § 6.) This authority appears, however, in St. Louis county, to be vested exclusively in the Court of Criminal Correction of St. Louis county. (Adj. Sess. Acts '68, p. 268, § 13.) (b.) To preliminary examinations in cases of crime. (Gen. Stat. 1865, chaps. 208, 209.) (c.) To actions for penalties, not exceeding one hundred dollars, given by any statute of this State. (Gen. Stat. 1865, chap. 177, § 2.) This being clearly no case of misdemeanor punishable by fine not exceeding one hundred dollars, nor an action for a penalty not exceeding one hundred dollars (because the act recited fixes neither punishment nor penalty, while the penalty sued for exceeds one hundred dollars), nor yet a preliminary examination in case of crime, it follows that the Police Court had, in no aspect of the case whatever, jurisdiction of the subject matter.

II. The act alleged to be violated (Act of March 23, 1868) is unconstitutional and void. "No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title." (Const. Mo. art. 4, § 32.) That act has the following title: "An act to amend an act entitled 'An act to enable the city of St. Louis to procure a supply of wholesome water,' approved March 13, 1867." (Sess. Acts 1867, p. 184.) 1. The subject matter of section 1 is indicated in the title. But the complaint is for a violation of section 2, the provisions of which are not expressed nor even hinted at in the title of the act. This section contemplates simply a compulsory process, which may be regarded as the levy of a tax upon certain individuals without having an object for such taxation expressed, or as a precautionary measure for the preservation of the health of a particular neighborhood, neither of which subjects is consistent with or expressed in the title. If the title of an act contemplates the grant of a benefit to a community, as it does in the present instance, a section of the act which compels certain individuals to pay for the privilege of such a benefit, whether they enjoy it or not, surely must contain a subject not expressed in the title. How can the imposition of this arbitrary tax upon certain individuals be consistent with the title of the act, when the purpose of the act—namely: the gain of a supply of wholesome water—may have been accomplished by the other provisions concerning the laying of pipes, and by the ordinances relating to the use of water and payment for licenses? And it will be observed that the provisions of the section in question do not depend upon the contingency of a failure to accomplish the purposes of the act through the operation of the other sections, but stand alone — harsh, arbitrary, unreasonable, and unnecessary.

The total departure of the second section from the scope of the act becomes apparent, beyond cavil, when we regard its sanitary features. A provision for the health of a particular neighborhood is not necessarily a provision which can enable a community to enjoy a general privilege. The section in question belongs properly, or should have been inserted originally, in the act creating the board of health, approved March 9, 1867. (Sess. Acts 1867,

p. 179.) Section 2 divests of power the board of water commissioners. To give them authority the act was passed, and grants power to the board of health, who have a different status, and labor for ends wholly foreign to those pursued by the first-named board. Surely a section which accomplishes this result does not contain a subject which is expressed in the title. The constitution of New York provided that "no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title." In 1854 the legislature of New York passed an act entitled "An act to release the Fishkill and Beekman Plank Road Company from the construction of part of their road, and for other purposes." This act contained eight sections. The first was consistent with the title. The second and third contemplated an evasion of responsibility by the company in certain cases. The words "and for other purposes" are held to have no meaning, and the act is declared void as to all sections except the first. (Fishkill v. Fish. & Beek. Pl. R. Co., 22 Barb. 634; see also 1 Seld. 285, 297.)

Now, the amendatory act of March 23, 1868, has a restricted title, if there ever was one in the history of legislation. Having read the original act, approved March 13, 1867, and having found that certain powers are exercised under it by certain officers, would any one imagine, from reading the title of the amendatory act, that it contained a section depriving such officers of authority in fact, and departing widely from the purpose of the original act? The provision of the constitution is not an idle measure. It was adopted by the people to put an end to a vicious system of legislation, which makes one act a cover for a number of different and inconsistent schemes. The objectionable features of the section in question may have escaped the attention of many members of the General Assembly — the title of the act being employed simply as the cover for a measure conferring upon a local board of officials extraordinary and dangerous powers.

The act under consideration purports to delegate a part of the legislative power to an inferior tribunal. It provides that "the parties who fail or neglect to comply with the provisions of this

section shall be subject to the same penalties as parties who use the water of the city and fail or refuse to pay the rate or assessment for the same." It is not contended here that the legislature has no authority to delegate to municipal corporations such legislative power as may enable them to regulate their municipal and police affairs and impose penalties for the violation of the regulations as made (The State v. Simonds, 3 Mo. 414); but it has clearly no authority to delegate to an inferior body the power to fix the penalty for an offense created by itself — which is exactly what is attempted to be done in the act before us — by making the penalty dependent upon the action of the city council, which may make it five dollars to-day, and five hundred dollars to-morrow.

" The legislative power shall be vested in a General Assembly, which shall consist of a senate and house of representatives." (Const. Mo. art. 4, § 1.) If it were conceded that the General Assembly has the power to vest either the city of St. Louis, or the board of water commissioners, or board of health, with authority to compel the citizens of the city to pay for the water from the city water-works under the circumstances set forth in the act, it would by no means follow that, having clothed either of these corporations with such power, it could delegate to another the authority to fix the penalty for disobedience to its orders. The power to impose a penalty for disobedience should accompany, as a necessary concomitant, the power to make the regulation. But in the case at bar the General Assembly has itself imposed the regulation, and none but itself can fix the penalty. The penal provision referring to the acts of another body to determine the punishment for a violation of a statute is therefore void.

The General Assembly has no authority to clothe either of the corporations before mentioned with the power to exact from the citizens so exorbitant and unjust a tax as that contemplated by the act under consideration. That it is a tax in support of the water-works system of St. Louis which is contemplated by this act, rather than the enforcement of a sanitary police regulation, is plainly apparent from the phraseology of the act itself. The

action of the board of health (which is intrusted with the sanitary police powers of the city) is in no wise binding upon the board of water commissioners. It is not the board of health which "may require the proprietors" * * "to take out licenses for the use of water, etc.," but the board of water commissioners. Nor is it the use of the water from the city waterworks that is made compulsory, but only the payment of a license for the use of such water. Under the act, as it now stands, no person can be punished for the use of water from any cistern or well, or for compelling the tenants in his house to use the same, no matter how thoroughly the board of health may be convinced of the deleterious quality of such water, provided he pays his license to the board of water commissioners. The preservation of the health of the citizens, by compelling them to use the water from the city water-works in lieu of what the board of health may deem injurious or unwholesome cistern or well water, is not the ultimate or paramount object of the act; for it neither secures this nor pretends to secure it. To ascribe such an object to this act would be to place a very low estimate upon the intelligence of the framers; but, if permitted to stand, it very effectually secures another object, to-wit: the payment of a water-tax into the city treasury, whether the person paying uses the water or not. If the legislature, then, intended to empower the board of water commissioners to levy a tax on all the proprietors of houses along such streets as they are ready to supply with water, it ought to be a uniform tax, according to the value of the property upon which it is levied. "All property subject to taxation ought to be taxed in proportion to its value" (Const. Mo. art 1, § 30); and it ought to be assessed upon all the property on such streets, not alone upon such as may be improved. "No property, real or personal, shall be exempt from taxation." (Const. Mo. art. 11, § 16.) The oppression and injustice which may be inflicted upon citizens under the operation of the act as it now stands is obvious. It is in violation not only of the constitution, but of every principle of justice and equality before the law, and ought not to be permitted to remain in force. (Garrett v. City of St. Louis, 25 Mo. 505.)

WAGNER, Judge, delivered the opinion of the court.

This was an action commenced in the Police Court of the city of St. Louis by filing a complaint against the defendant claiming the sum of three hundred dollars for the violation of "An act of the General Assembly of the State of Missouri to amend 'An act to enable the city of St. Louis to procure a supply of wholesome water,' approved March 13, 1867," approved March 23, 1868.

The complaint stated in substance that at a specified date the defendant was the owner of a house situated on Broadway street, and that the board of health of the city had declared by resolution that the use of water from the public water-works of said city, in and for said house, was demanded as a sanitary measure for the preservation of the health of the inmates and inhabitants thereof; and that the defendant had failed and neglected to take out a license for the use of water in said house after the board of water commissioners had notified him of their readiness to supply the said house with water. And the action was instituted to recover the statutory penalty.

The statute on which the proceeding was based was an act amendatory of "An act to enable the city of St. Louis to procure a supply of wholesome water," which was approved March 23, 1868. (Adj. Sess. Acts 1868, p. 291.)

By the second section of the said amendatory act it is provided as follows: "The board of water commissioners of said city may, when and so soon as it is prepared to supply the said city or any part thereof with water, require the proprietors, owners, or lessees, or their agents, of houses, stores, and other buildings in the said city, or in such parts thereof as it is ready to supply as aforesaid, to take out license for the use of water for such house, store, or building, according to the rates and assessments as fixed by ordinance of the city for the use of water; and the said rate and assessment shall be payable by all such proprietors, owners, or lessees, or their agents, as well by those who consent as by those who refuse to place in their houses, stores, and buildings the water-pipe to receive the same, and shall be payable whenever the said

board of water commissioners shall have notified the proprietor, owner, lessee, or his or her agent, of the readiness of said board to supply such house, store, or building, with water as aforesaid. The parties who fail or neglect to comply with the provisions of the section shall be subject to the same penalties as parties who use the water of the city and fail or refuse to pay the rate or assessment for the same; *provided, however*, that this section shall not have force or effect unless the board of health of the city of St. Louis shall, in the first instance and in every case, first, by resolution duly passed, have declared that in its judgment the use of water from the public water-works of the city, in any such house, store, or building, is demanded as a sanitary measure for the preservation of the health of the inmates or inhabitants of such house, store, or building."

Judgment was given against the defendant in the Police Court, and he appealed to the Criminal Court. In the latter court a motion was filed to dismiss the cause; first, because the Police Court has no jurisdiction over the same; secondly, because the act of the General Assembly under which the proceeding was instituted was void as to the section relating to this case.

This motion was sustained, and the plaintiff prosecuted her writ of error.

I will consider the above points transversely from the order in which they are stated. It is contended with great zeal that the second section of the amendatory act is unconstitutional and void, as being in violation of the thirty-second section of the fourth article of the constitution of this State, which declares that " no law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title; but if any subject embraced in an act be not expressed in the title, such act shall be void only as to so much thereof as is not so expressed." It is said that the section treats of a subject entirely distinct and independent from any matter indicated by the title, inasmuch as it purports to confer new and very singular powers on the board of health and board of water commissioners.

The constitutional clause is new with us, though it has been adopted in many of our sister States.

38—XLII.

The general scope of the inhibition may well be inferred, when we glance at the history of legislation and scan the character of many of the bills that have been passed in legislative bodies. It was intended to prevent surprise or fraud upon the members of the legislature by means often resorted to in the provisions of bills, of inserting matters of which the title gave no intimation; and also to effectually stop the vicious and corruptive system familiarly known as "log-rolling."

The practice of comprising in one bill subjects of a diverse and antagonistic nature, in order to combine in its support members who were in favor of particular measures, but neither of which measures could command the requisite majority on its own merits, was found to be not only a corrupting influence in the legislature itself, but destructive of the best interests of the State. But this was not more detrimental than that other pernicious practice by which, through dexterous and unscrupulous management, designing men inserted clauses in the bodies of bills, of the true meaning of which the titles gave no indication, and by skillful maneuvering urged them on to their passage. These things led to fraud, surprise, and injury, and it was found necessary to apply a corrective in the shape of a constitutional provision. But while the clause was embodied in the organic law for the protection of the State and the legislature, it was not designed to be unnecessarily restrictive in its operation, nor to embarrass legislation by compelling a needless multiplication of separate bills. It was only the intention to prevent the conjoining in the same act of incongruous matters and of subjects having no legitimate connection or relation to each other. If the title of an original act is sufficient to embrace the provisions contained in an amendatory act it will be good, and it need not be inquired whether the title of the amendatory act would of itself be sufficient. (Brandon v. The State, 16 Ind. 197.)

Since the adoption of the constitution there has been but one case in this court involving the question here presented, and that was the case of The State ex rel. Hixon v. Lafayette County, 41 Mo. 39. There the legislature had passed an act entitled "An act to provide for appeals in contested election cases," and the

eighth section undertook to give the right of appeal in all other civil cases. This, we held, was inoperative and void, as being in contravention of the plain meaning and import of the constitution. It will be perceived that there was in the act no connection or congruity between the subject of appeals in contested elections and appeals in other civil cases. The title furnished no intimation, and no person seeing the title would naturally expect to find any provision in regard to appeals in other civil cases. In Texas, where the same provision substantially exists, the courts give it a liberal construction, and it has been decided that an act which was entitled " to regulate proceedings in the County Court," and gave an appeal from the County Court to the District Court, and regulated proceedings therein, was not within the mischief contemplated by the constitution, and the act was valid. (Murphy v. Menard, 11 Texas, 673.)

In New York, the Court of Appeals say : " There must be but one subject; but the mode in which the subject is treated and the reasons which influenced the legislature cannot and need not be stated in the title, according to the letter and spirit of the constitution."

In Iowa, the Supreme Court say that, in determining what laws shall be valid under this clause, " the unity of object is to be looked for in the ultimate end designed to be attained, and not in the details leading to that end." (The State v. County Judge, etc., 2 Iowa, 280.)

In Michigan, it has been accordingly held that the title of " An act to establish a police government for the city of Detroit" was not objectionable for its generality, and that all matters properly connected with the establishment and efficiency of such a government, including taxation for its support and courts for the examination and trial of offenders, might constitutionally be included in the bill under this general title. It was said that, under any different ruling, " the police government of a city could not be organized without a distinct act for each specific duty to be devolved upon it, and these could not be passed until a multitude of other statutes had taken the same duties from other officers before performing them." And these several statutes, fragmentary as they must necessarily be, would often fail of the

intended object, from the inherent difficulty in expressing the legislative will when restricted to such narrow bounds. (People v. Mahaney, 13 Mich. 495; Morford v. Unger, 8 Iowa, 82; Whiting v. Mount Pleasant, 11 Iowa, 482; Supervisors v. People, 25 Ill. 181; Clinton v. Draper, 14 Ind. 295; Successors of Lanzetti, 9 La. An. 329.) The generality of a title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be employed in the title in defining it. (Ind. Cen. R. R. Co. v. Potts, 7 Ind. 681; State v. Powers, 14 Ind. 195.) It is very plain, however, that the use of the words " other purposes," which have been extensively used in the title to acts to cover any and every thing, whether connected with the main purpose indicated by the title or not, can no longer be of any avail. (Town of Fishkill v. Fishkill & Beekman Pl. R. Co., 22 Barb. 642; Ryerson v. Utley, 16 Mich. 269.)

If the legislature has seen proper to make the title restrictive, the courts have no authority, by mere construction, to enlarge it or make it more comprehensive. Thus: " An act concerning promissory notes and bills of exchange" provided that all promissory notes, bills of exchange, or other instruments in writing for the payment of money, or for the delivery of specific articles, or to convey property, or to perform any other stipulations therein mentioned, should be negotiable, and assignees of the same might sue thereon in their own names; it was held that this act was void as to all the instruments mentioned therein except promissory notes and bills of exchange. (Menwhertin v. Price, 11 Ind. 199.) It is perfectly obvious that it would have been easy to have formed a title that would have embraced them all. This subject is well considered by Judge Cooley in his recent work on Constitutional Limitations, p. 141.

In the act to which the section under consideration is amendatory, the title is " To enable the city of St. Louis to procure a supply of wholesome water." To accomplish that object it was necessary to act through agents, and hence a board of water com-

missioners was constituted ; and, as a consequence, their powers, duties, and responsibilities, were defined. That the board of health should say when in their judgment it was necessary as a sanitary measure that certain houses should be supplied with water, does not alter the case. They take no steps toward carrying out the act, nor do they exert any active agency in the matter. When their views are made known, the board of water commissioners then act, if they see proper. The section, although it confers extraordinary powers, relates clearly to the subject intimated in the title, and is entirely congruous and connected with it. Every person, upon an inspection of the title, would naturally expect to find the full scope of the powers, duties, and privileges of the commissioners set forth in the act. In my opinion the law is unobjectionable, and the point is not well taken.

The next question raised concerns the jurisdiction of the Police Court. The law establishing that court provides that the police justice shall have the same jurisdiction as a justice of the peace, within the city limits, in all State cases. He shall have jurisdiction over all cases arising under any ordinance of the city, and in all cases of assault and battery arising within said city, subject to appeal, etc. (Sess. Acts 1867, p. 69, par. 18.)

The record shows that this is not a case in which a justice of the peace would have had jurisdiction, nor is it for a violation of a city ordinance, as the complaint shows on its face that it was for an alleged violation of an act of the legislature. The police Court is a court of limited jurisdiction, not proceeding according to the course of the common law ; and nothing is better settled than that such courts must confine themselves strictly within the authority given. For this reason the judgment of the court below will be affirmed. Another point was raised in the argument by defendant's counsel, viz : that the legislature cannot constitutionally grant the power to the board of water commissioners to compel persons to pay for water whether they used it or not. It is placed upon the ground of a sanitary regulation, and the provision has been virtually adopted in other States ; but the point was not strongly pressed, and I have forborne discussing it.

Judgment affirmed. The other judges concur.