## ELTING et al., Appellants, v. HICKMAN et al.

### Division Two, February 24, 1903.

1. **Road Law of 1895: TITLE: CONSTITUTIONAL.** The road law of 1895 is not open to the charge that, while by its title it purports to be only an act "to raise revenue" for roads in districts organized thereunder, it conceals from the title its other purpose, which is to appropriate or use revenue raised by other laws. It does not appropriate revenues which have already been collected or set apart for other purposes.

2. ———: ———: ———: **SUFFICIENCY.** All the provisions of the road law of 1895 relate to the same subject, have a natural connection with that subject, are the incidents or means of carrying it into effect, and the title is not vulnerable to the objection that it fails to contain provisions which are not referred to in the body of the act.

3. ———: **GRANT OF PUBLIC MONEY.** The road law of 1895 does not grant or authorize the making of any grant of public money to any individual or association of individuals, municipal or other corporation, nor does it authorize any county to lend its credit to

any such individual or corporation, and therefore it is not in conflict with sections 46 and 47 of article 4 of the Constitution. No part of the county revenues raised outside the district organized under the act is appropriated by the act to maintaining roads within that district. The money used for that purpose must be raised within the district.

4. ――――: APPLICATION OF REVENUE: DRAMSHOP TAX. The road law of 1895, applies three-sixths of the county dramshop road money and the property tax road money, to the building of permanent roads in the district where paid, outside of the cities and villages, and leaves another sixth to be applied under the direction of the county in pursuance to another statute.

5. Taxation by County: PRIVATE PROPERTY. Moneys acquired by a county from the taxation of the properties of her taxpayers is not the private property of the county.

6. Cities: CLASSES: SPECIAL CHARTERS. Cities existing under special charters which have the requisite number of inhabitants to become. cities of the third class, do not belong to that class unless they elect to become such, and, hence, they do not belong to either of the four classes mentioned in the Constitution, and, therefore, an act which distinctly excepts them from the operation of its provisions, is not vulnerable to the charge that it divides cities of the third class into two classes, thus making two out of one.

7. Special Law: ROAD LAW OF 1895. The road law of 1895 is not special legislation within the meaning of the Constitution. The fact that it gives special privileges and rights in the application of the moneys raised therein to road districts organized thereunder which are not given to other districts of the county, does not make it special legislation.

8. ――――: GENERAL PRINCIPLE. A law which includes all persons or political subdivisions that are in or that may come into like situations and circumstances, is not special legislation.

9. Appropriation of Public Money to Private Use. An appropriation of money raised by taxation to the construction, repairment and maintenance of public roads is in no sense an appropriation of public revenue to a private use. The road law of 1895, providing for the organization of road districts and for the turning over of certain parts of the dramshop licenses and other taxes raised therein to a road commission to be used in constructing and maintaining public roads within such district, is not an appropriation of public moneys to private use.

10. Taxation: LACK OF UNIFORMITY. An act which does not discriminate in the levy of a poll tax in the road districts organized under it, but operates alike upon all male inhabitants of a certain age

therein, is not in violation of the constitutional provision in reference to uniformity of taxation. An act that assesses a poll tax of $2.50 on all male inhabitants within road districts to be organized thereunder, between the ages of twenty-one and sixty years, while the poll tax for road purposes in the rest of the county is $2 on persons between the age of twenty-one and fifty, is not lacking in the uniformity prescribed by the Constitution.

11. City's Revenue: APPROPRIATION TO OUTSIDE ROADS. Cities can appropriate money collected by them to the construction and maintenance of public roads outside their corporate limits, which lead into and enter them. They have the same power to use their revenues for such purposes as they have to use it on their streets. Such use of their money is not unconstitutional.

Appeal from Jasper Circuit Court.—*Hon. Joseph D. Perkins,* Judge.

AFFIRMED.

*McReynolds & Halliburton, T. C. Tadlock* and *Howard Gray* for appellants.

(1) The act is in violation of section 28, article 4 of the Constitution, in this: The title says: "And to raise revenue therefor," but in no way indicates that the act is to appropriate or use revenue raised by other laws, as is done in sections 16 and 17 of said act, where it appropriates an amount equal to one-fourth of the city and one-half of the county dramshop, pool and billiard table license money collected respectively by the city and county under and by virtue of other acts of the Legislature. In fact, the title is a concealment of that fact. State ex rel. v. Miller, 100 Mo. 444. (2) The act violates sections 46 and 47, article 4 of the Constitution, in that it appropriates and grants to special road districts the public money of the counties and cities, which are raised under other general laws of the State and appropriated by such laws. State ex rel. v. Walker, 85 Mo. 41; State ex rel. v. Seibert, 123 Mo. 443; State ex rel. v. County Court, 142 Mo. 575; State ex rel. v. Curators, 57 Mo. 178; Laws 1891, p. 128; Laws 1893, p. 150. (3) The act violates section 53, article 4 of

the Constitution in that it is special legislation.   (a) It divides cities of the third class into two classes, making two classes out of one, which can not be done.   State v. Thomas, 100 Mo. 448; State v. Walsh, 136 Mo. 405; St. Louis v. Dorr, 145 Mo. 472; Owen v. Baer, 154 Mo. 434; State ex rel. v. Borden (Mo.), 64 S. W. 172.   (b) There can be a city of the third class with a special charter. The point that controls as to what class a city belongs is the population.   Sec. 7, art. 9, Constitution; R. S. 1889, secs. 972, 973, 974, 975; Kelley v. Meeks, 87 Mo. 399; Rutherford v. Heddens, 82 Mo. 388.   The court will see that the Constitution provides for four classes of cities, and provides for such as desire to elect to be governed by general law.   (c) It gives special rights and privileges to these road districts that are not given to other road districts in the same county, and attempts to do this by taking money already appropriated to the general road district by the Act of 1893, page 150.   State ex rel. v. Herman, 75 Mo. 340; State ex rel. v. Miller, 100 Mo. 448; State ex rel. v. County Court Jackson Co., 89 Mo. 237; State ex rel. v. Thomas, 138 Mo. 95; St. Louis v. Dorr, 145 Mo. 475; Owen v. Baer, 154 Mo. 434; State ex rel. v. Borden (Mo.), 64 S. W. 172.   (4)   The act is violative of section 3, article 10 of the Constitution, in that:   (a) It appropriates public revenue for a private purpose.   State ex rel. v. Switzler, 132 Mo. 314. (b) Sections 17 and 18 of said act provide for levying an extra tax in these special road districts.   The authority levying the tax is the county court, and the territorial limits is the county.   (5). The act violates section 10, article 10 of the Constitution in that it attempts to appropriate money levied and collected by city authorities, to uses and purposes outside of the city.

*C. H. Montgomery* for respondents.

(1)   The Act of 1895 is not in violation of section 28, article 4, of the Constitution.   The title of the act is an abstract of the act itself.   It would be difficult to state the substance of the act more clearly.   The act

does not raise revenue. It is not retrospective in its operation. As soon as the act was passed and the road districts were formed, the revenue thereafter in such districts was raised for the identical purpose of improving the roads in such districts. It is a mistake to say it is the money of the county appropriated for this purpose. State ex rel. v. County Court, 128 Mo. 443. It is only necessary that the title indicate the subject of the act in a general way without entering into details. Besides, sound policy and legislative convenience dictate a liberal construction of the title of statutes. State v. Whittaker, 160 Mo. 59; Ward v. Board of Equalization, 135 Mo. 324; Witzmenn v. Railroad, 131 Mo. 617. (2) The road law of 1895 does not violate section 53, article 4, of the Constitution. It is not in any sense a special law. Cities are not required to give up their special charters, unless they elect to do so. Rutherford v. Heddens, 82 Mo. 388. There can be no such thing as a city of the third class under a special charter. A city can not belong to either the third or fourth class unless it elects to do so, and when it does, it ceases to be a city under a special charter. Secs. 5254 and 5255, R. S. 1899. The cases of State v. Walsh, 136 Mo. 405, and State v. Thomas, 138 Mo. 95, cited by appellant, have both been recently distinguished by State v. Thompson, 160 Mo. 333. An act prohibiting book-making, pool-selling, etc., at all places except upon race courses, and fair grounds where the races are to be run, and then only by persons of proper character, having a license from the State Auditor, is not class legislation, either as to persons or place. State v. Thompson, 160 Mo. 333; State v. Whittaker, 160 Mo. 70; Ex parte Lucas, 160 Mo. 230; Hamman v. Cen. Coal and Coke Co., 156 Mo. 232; State ex rel. v. Mason, 155 Mo. 487. (3) The road law of 1895 is not a special law. The law applies to all districts containing cities of the third and fourth class. It applies to all such districts and excludes none. There is no such thing as a city of the third class operating under a special charter. Cities are not required

by the Constitution to surrender their special charters unless they elect to do so. Rutherford v. Heddens, 82 Mo. 388. Cities operating under special charters and possessing the requisite population do not become cities of the third or fourth classes unless they elect to become so. Secs. 5254 and 5255, R. S. 1899. The Act of 1895 adopted the classification provided by the Constitution, and, hence, can not be unconstitutional. Lynch v. Murphy, 119 Mo. 172; State ex rel. v. County Court, 128 Mo. 427; State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Yancy, 123 Mo. 391; Spaulding. v. Brady, 128 Mo. 653; State ex rel. v. Arnold, 136 Mo. 451; State ex rel. v. Higgins, 125 Mo. 364; Ex parte Renfrow, 112 Mo. 591. (4) The Act of 1895 does not violate section 3, article 10, of the Constitution. It appropriates no public revenue to a private purpose. It takes the road money and applies it all to the public roads, through the instrumentality of the special road districts. The road taxes are alike in all the districts organized under the Act of 1895, now section 9619, Revised Statutes 1899. The poll taxes and other taxes are uniform upon the same class of subjects in the road districts. Sec. 9619, R. S. 1899; State ex rel. v. Field, 119 Mo. 613; Kansas City v. Whipple, 136 Mo. 478; St. Louis v. Bowler, 94 Mo. 634; City of Aurora v. McGannon, 138 Mo. 38; St. Louis v. Trans. Co., 84 Mo. 156; De Arman v. Williams, 93 Mo. 158. (5) The Act of 1895 is not in conflict with section 10, article 10, of the Constitution. All cities are interested in the public highways beyond their limits. The citizens of such cities have always been taxed to keep up such roads. Licenses and taxes paid in the cities have for many years been applied to the improvement of the country roads in the counties where such cities are located. Secs. 4575 and 7663, par. 2, R. S. 1889. Cities are permitted to devote their revenues to the improvement of the public roads near them. Sec. 7922, R. S. 1889; sec. 7846, R. S. 1889. The Legislature has control over the revenues of the city as over those of the county and State, and can direct their application. State ex rel. v. Board of Education, 141 Mo. 50. It is

within the power of the Legislature to impose a tax upon a particular subdivision or municipality of the State when, in its judgment, it is for the benefit of that locality as well as the State at large.   State ex rel. v. Mason, 153 Mo. 51; State ex rel. v. Field, 119 Mo. 614; State ex rel. v. Owsley, 122 Mo. 68; State ex rel. v. Board of Education, 141 Mo. 49.   In the matter of the apportionment of taxes:  78 Mo. 596; St. Louis v. Shields, 52 Mo. 351; State ex rel. v. St. Louis County Court, 34 Mo. 546.

BURGESS, J.—This is an action by plaintiffs, taxpaying citizens of the county of Jasper, against the defendants, judges of the county court of said county, to restrain and enjoin them as such court, from drawing warrants on the county treasurer of said county in favor of certain specified road districts organized in said county under the provision of an act of the General Assembly of the State of Missouri, entitled, ''An act to provide for working and improving the public roads, by the organization of special road districts of territory not more than six miles square, in which is located a city of the third or fourth class, except cities of the third class organized under special charter, and to raise revenue therefor, and to further provide that when this act shall become a law it shall take effect and be in force only in such prescribed territory wherein the county courts shall, by order of record, declare the same to be the law in such prescribed territory where adopted by the legal voters thereof—with an emergency clause,'' approved March 9, 1895.  [Laws 1895, p. 253.]

The petition, leaving off the formal parts, is as follows:

''Plaintiffs state that the plaintiff Alonzo Elting is a resident taxpaying citizen of Madison township, Jasper county, Missouri; that plaintiff Charles D. James is a resident taxpaying citizen of Marion township, Jasper county, Missouri; and that plaintiff H. D. Hoover is a resident taxpaying citizen of Preston township, Jasper county, Missouri; and that plaintiff I. S.

Thompson is a resident taxpaying citizen of Sheridan township, Jasper county, Missouri; and that plaintiff Daniel Bickell is a resident taxpaying citizen of Lincoln township, Jasper county, Missouri; and that plaintiff George W. Duncan is a resident taxpaying citizen of McDonald township, Jasper county, Missouri; and that plaintiff W. E. Bridges is a resident taxpaying citizen of Sarcoxie township, Jasper county, Missouri; and that plaintiff W. H. Rogers is a resident taxpaying citizen of Union township, Jasper county, Missouri; and that plaintiff Hiram Smith is a resident taxpaying citizen of Jackson township, Jasper county, Missouri; and that plaintiff J. C. Harvey is a resident taxpaying citizen of Galena township, Jasper county, Missouri; and that plaintiff J. H. McBee is a resident taxpaying citizen of Twin Grove township, Jasper county, Missouri; and that plaintiff Edward S. Billingslea is a resident taxpaying citizen of Jasper county, Missouri; and that plaintiff George Sawyer is a resident taxpaying citizen of Duval township, Jasper county, Missouri.

"Plaintiffs further say that the defendant J. M. Hickman is the duly elected, qualified and acting presiding judge of the county court of Jasper county, Missouri; that the defendant W. R. Schooler is the duly elected, qualified and acting associate judge of the county court of Jasper county, Missouri, for the eastern district of said county; that the defendant M. C. Terry is the duly elected, qualified and acting associate judge of the county court of Jasper county, Missouri, for the western district of said county; that the said three defendants compose and are the county court of Jasper county, Missouri.

"Plaintiffs further state that the city of Carterville is a city of the fourth class, situated in Joplin township, Jasper county, Missouri; that the city of Webb City is a city of the third class, situated in Joplin township, Jasper county, Missouri; that the city of Joplin is a city of the third class, situated in Galena township, Jasper county, Missouri.

"Plaintiffs further say that by virtue of an act of the General Assembly of the State of Missouri, approved March 9, 1895, entitled, 'an act to provide for working and improving public roads, by the organization of special road districts of territory of not more than six miles square, in which is located a city of the third or fourth class, except cities of the third class organized under a special charter, and to raise revenue therefor, and to further provide that when this act shall become a law it shall take effect and be in force only in such prescribed territory wherein the county court shall, by order of record, declare the same to be the law in such prescribed territory where adopted by the legal voters thereof, with an emergency clause', the city of Carterville, by proceedings duly had under said act on April 10, 1896, duly organized a special road district not more than six miles square, which included the said city of Carterville, under the name and style of Carterville Special Road District. That a board of commissioners for said road district were duly and legally appointed in accordance with the provisions of law, and said road district is still in existence and its board of commissioners in active operation; that one W. B. Kane is the treasurer of the board of commissioners of said Carterville Special Road District.

"That the city of Joplin, by proceeding duly had under said act on May 14, 1896, duly organized a special road district not more than six miles square, which included the said city of Joplin, under the name and style of the Joplin Special Road District; that a board of commissioners for said road district were duly and legally appointed in accordance with the provisions of law, and said road district is still in existence, and its board of commissioners in active operation; that one T. W. Cunningham is the treasurer of the board of commissioners of said Joplin Special Road District.

"That the city of Webb City, by proceedings duly had under said act on September 10, 1896, duly organized a special road district, not more than six miles square, which included the said city of Webb City, un-

der the name and style of the Webb City Special Road District; that a board of commissioners for said road district were duly and legally appointed in accordance with the provisions of law, and said road district is still in existence and its board of commissioners in active operation; that one J. P. Stewart is the treasurer of the board of commissioners of said Webb City Special Road District.

"Your petitioners further say that the county court of Jasper county, by order duly entered of record, has heretofore declared said Act of 1895 to be the law in the territory prescribed and set out for each of said special road districts by their respective proceedings to organize the same. Your petitioners further state and charge that by virtue of their organizations, as special road districts as aforesaid, the Carterville Special Road District, the Joplin Special, Road District and the said Webb City Special Road District, have demanded and received from the county court of Jasper county, a large amount of the public money, they professing to act under and by virtue of section 17 of said act. That the county court of Jasper county, on the demand of said special road districts, have issued their warrants in favor of said special road districts on the county treasurer of Jasper county, for large sums of money payable to the treasurer of the board of commissioners of said special road districts, or to other persons designated by the board of commissioners of said special road districts.

"Your petitioners further say that in pursuance of the laws of the State of Missouri, the county court has heretofore, by order of record, fixed a fee for license of dramshops doing business in Jasper county, at the sum of four hundred dollars for each six months for county purposes, and has fixed the fee for license for billiard and pool tables operating and doing business in Jasper county at the sum of ten dollars for every six months for county purposes; that there are now in existence in the said city of Carterville four dramshops which are paying to Jasper county a fee of $400 each.

for such license for every six months, for county purposes; that there are now in the city of Webb City six dramshops that are paying to the county of Jasper a fee of $400 each for such license, for county purposes; that there are in the city of Joplin twenty-two dramshops that are paying to the county of Jasper a fee of $400 each every six months for such license, for county purposes; that said licenses are granted to said dramshops by the county court of Jasper county, upon the payment of $400 each every six months to the county of Jasper, as a license and authority to do business as such dramshops in said county of Jasper, and said license fees so collected by said county of Jasper from such dramshops are all paid to the county treasurer of said county and become a part of the revenue, funds and public moneys of said county of Jasper. That in the cities of Carterville, Webb City and Joplin there are a large number of billiard and pool tables in operation under licenses from said county of Jasper that have paid and are paying to said county of Jasper the sum of ten dollars each every six months by the owners thereof, for the privilege of operating and running the same in said Jasper county. That said license fees so collected by said Jasper county from said pool and billiard tables are paid into the county treasury and become a part of the revenue funds and public moneys of said Jasper county. That the amount so paid for pool and billiard licenses in said cities to said county of Jasper is unknown to these plaintiffs.

"That section 17 of said act, providing for the organization of said special road districts, provides as follows: 'Sec. 17. In all counties wherein special road districts may be organized under this act, where money shall be collected as county taxes upon property within such special road district, or as dramshop, pool or billiard table licenses on business within such special road district, the county court shall, as such taxes or licenses are collected, and as the board of commissioners of such special road district shall make application to such county court, draw warrants upon the county treasurer,

payable to the treasurer of such board of commissioners, or to such other persons as the board may from time to time designate, for an amount bearing such proportion to the entire amounts of the year's taxes so collected upon said property as the amounts annually appropriated or expended for road and bridge purposes shall bear to the total county revenue for such year, and also to an amount equal to one-half of all the dramshop, pool or billiard table licenses collected by the county as county licenses from such businesses carried on within the limits of such special road district; and all such sums so paid out shall be expended upon the roads under the charge and control of such board of commissioners, as in this act provided: Provided, that the amount of taxes collected by the county on the property within such special road disrict, and thus applied to the improvement of the roads, shall not be less than ten cents nor more than twenty cents on a hundred dollars of assessed valuation of the property within each special road district.'

"Plaintiffs further allege and charge that, acting under the pretended authority of said act of the Legislature aforesaid, and especially said section 17 of said act, the county court of Jasper county has caused, since the organization of said special road districts, to be issued warrants on the treasurer of Jasper county in favor of the treasurers of the board of commissioners of said special road districts, or to other persons that the board of commissioners has heretofore designated, warrants in a very large sum of money, to-wit: for the Carterville Special Road District, $2,500; to the Webb City Special Road District, $4,500; to the Joplin Special Road District, $18,000, which said warrants were ordered to be issued by said county court of Jasper county, upon the demand of the board of commissioners of said road districts, and were drawn upon the treasurer of Jasper county against the public money belonging to said Jasper county, and were by said treasurer paid out of the public moneys belonging to said county of Jasper.

"Your petitioners further allege and charge that the defendants herein, as judges of the county court and as the county court of Jasper county, are threatening to issue further warrants on the treasurer of Jasper county, drawn against the public funds and public moneys of said Jasper county, in favor of the treasurers of said special road districts, or such other persons as the boards of commissioners of said special road districts may direct, for large amounts of money to be paid out of the public moneys and funds of said Jasper county, and said defendants, unless restrained and enjoined by this court, will in the future continue issuing warrants as aforesaid, in favor of the treasurers of said special road districts, or other persons to whom the boards of commissioners of said special road districts may direct, drawn on the treasurer of Jasper county, payable out of the funds and public moneys of said Jasper county for large sums of money.

"Your petitioners further allege and charge that all of the warrants heretofore issued by the county court of Jasper county in favor of the respective treasurers of said special road districts, or in favor of other persons to whom the board of commissioners of said special road districts may have directed, drawn on the treasurer of Jasper county, and against the public moneys and funds of Jasper county in the hands of said treasurer, were without authority of law and were a misapplication and misappropriation of the public money and funds of said Jasper county, and any future warrants ordered by the defendants, as such county court, to be drawn in favor of the treasurers of said respective special road districts, or other persons, to whom the boards of commissioners of such special road districts may direct, on the treasurer of Jasper county, to be paid out of the public moneys and funds aforesaid, are and will be illegal and void, and will be a misappropriation and misapplication of the public moneys and funds of Jasper county, and without authority of law.

"Your petitioners allege and charge that said Act of 1895 is unconstitutional and void, and that sections 14, 16 and 17 of said act are specially in violation of the provisions of the Constitution of the State. Said Act of 1895 and sections 14, 16 and 17 of said act are specially in violation of section 28 of article 4, sections 46 and 47 of article 4, and section 53 of article 4, and section 6 of article 9, and sections 3 and 10 of article 10 of the Constitution.

"Your petitioners say that they have no legal remedy whatever to prevent the issuance of warrants as aforesaid in favor of said special road districts, their treasurers or persons to whom their boards of commissioners may direct, drawn on the treasurer of Jasper county, against its public funds and moneys, and that they have no legal remedy by which said moneys can be recovered after once being paid out on such warrants by the county treasurer of Jasper county.

"Your petitioners further state that they bring this suit not only in their own behalf, but in behalf of other resident taxpaying citizens of Jasper county similarly situated.

"Your petitioners further charge and allege that the said illegal misapplication and misappropriation of the public money and funds of Jasper county, as aforesaid, works a great hardship and injustice upon the taxpaying citizens of Jasper county, outside of such special road districts in this, that it takes away from them, and from their use, public money and funds of Jasper county, and reduces the amount of the public funds of Jasper county to be appropriated and used for general public purposes in said county, and the misapplication and misappropriation of the same for special use and benefit of said special road districts.

"Wherefore, your petitioners pray the court to perpetually enjoin and restrain the defendants herein as judges of the county court, and as the county court of Jasper county, Missouri, from issuing or ordering to be issued any further warrants under and by virtue of said section 17 of said Act of 1895, drawn on the treas-

urer of Jasper county, payable out of the public funds and moneys of said county in favor of the treasurers of either or any of said special road districts, or in favor of any other persons whom the boards of commissioners of said special road districts may direct, and for such other and further orders, judgments and decrees as may be proper in the premises.''

Defendant M. C. Terry demurred to the petition for the following grounds of objection:

''1.  Said petition does not state facts sufficient to constitute a cause of action.

''2.  Several causes of actions have been improperly united.

''3.  There is a defect of parties defendant.''

The defendant J. M. Hickman and W. R. Schooler demurred to the petition for the following grounds of objection:

''1.  Said petition does not state facts sufficient to constitute a cause of action.

''2.  Several inconsistent causes of action have been improperly united in said petition.

''3.  Several causes of action have been improperly united in the same count of said petition.

''4.  There is a defect of parties, both plaintiff and defendant, in said petition.''

The demurrers were sustained, the petition dismissed, and final judgment rendered for defendants, from which plaintiffs, after unsuccessful motions in arrest, appeal.

The title of the act, it is claimed, is not in accordance with the mandates of section 28, of article 4, of the State Constitution which declares that ''no bill  .  .  . shall contain more than one subject, which shall be clearly expressed in its title,'' in that, the title says, ''and to raise revenue therefor,'' but in no way indicates that the act is to appropriate or use revenue raised by other laws, as is done in sections 16 and 17 of said act, where it appropriates an amount equal to one-fourth of the city, and one-half of county, dramshop, pool and billiard table license

money collected respectively by the city and county under and by virtue of other acts of the Legislature, but conceals that fact. This is not, we think, a correct interpretation of the act. It provides for the raising of revenue for the purposes specified in the act, and is clearly prospective in its operation, as it provides for raising revenues after its passage, and does not appropriate revenues which have been collected or set apart for any other purpose. The manner in which the revenues are to be raised, and their purpose, is not only germane to the title of the act, but the title is a fair index of the subject-matter of the, act. The test is, that "when all the provisions of a statute fairly relate to the same subject; have a natural connection with it, are the, incident or the means of accomplishing it, then the subject is single, and if it is sufficiently expressed in the title, the statute is valid." [Sedgwick on Statutory and Constitutional Law (2 Ed.), 521; State ex rel. v. Miller, 100 Mo. 439; St. Louis v. Tiefel, 42 Mo. 578; State v. Mathews, 44 Mo. 523; State v. Miller, 45 Mo. 495; City of Hannibal v. County of Marion, 69 Mo. 571; State ex rel. v. Mead, 71 Mo. 268; Ewing v. Hoblitzelle, 85 Mo. 64.] It is clear that all of the provisions of the act fairly relate to the same subject, have a natural connection with it, are the incidents or means of carrying it into effect, and are not vulnerable to the objections urged against it.

It is said that the act violates sections 46 and 47 of article 4 of the Constitution, in that it appropriates and grants to special road districts the public money of the counties and cities, which are raised under other general laws of the State and appropriated by such laws.

The first of these sections prohibits the Legislature from granting or authorizing the making of any grant of public money or thing of value to any individual, association of individuals, municipal or other corporation, while the other section provides that the Legislature shall have no power to authorize any county, city, town or township, or other political corporation or subdivision of the State now existing, or that may be here-

after established, to lend its credit, or to grant public money or thing of value in aid of or to any individual, association or corporation whatever.

As the law does not grant or authorize the making of any grant of public money or thing of value to any individual, association of individuals,. municipal or other corporation, it is clearly not in conflict with the provisions of section 46, supra. [State ex rel. v. County Court, 128 Mo. 427.]   Nor does the act authorize any county, city, town or township, or other political corporation, or subdivision of the State now existing, or that may be hereafter established, to lend its credit, or grant public money or thing of value in aid of or to any individual, association or corporation, and is not therefore in conflict with section 47,. supra.

It will be observed that no part of the revenues raised outside the limits of the road districts organized under the act is appropriated to the maintaining of roads in the district, but that all money to be used for that purpose is collected in the districts.

The case of the State ex rel. v. Walker, 85 Mo. 41, is relied upon by plaintiffs as sustaining their contention, but it does not, we think, do so.   That case is bottomed upon the case of Webb v. Lafayette County, 67 Mo. 353, in which it was ruled that the Act of 1868 (Laws 1868, pp. 92 and 93), was unconstitutional and void upon the ground that it permitted a subscription to be made by a municipal township to the stock of a railroad company, upon the vote of two-thirds of the qualified voters voting on the question at an election held for that purpose, where the Constitution of 1868, under which the election was held, required the assent of two-thirds of all the qualified voters of the township to authorize such subscription.   It was also held that the act was unconstitutional for the further reason that the fifth section of the act appropriated all the state and county taxes to be collected within the county from any railroad company, to which the township had subscribed, to the reimbursement of the township for its subscription.   The effect of which was to indirectly

make the State extend its aid to railroads, which was expressly prohibited by the Constitution, and it was also making the county extend its aid to railroads without the assent of two-thirds of the voters as required by the Constitution.

The case of the State ex rel. v. County Court, 142 Mo. 575, is another authority relied upon by plaintiffs, but all that was decided in that case was, that when county taxes are collected and the money is paid into the county treasury, it becomes public money, and the act of the Legislature which authorized the appropriation of any part of it by the county court to be expended upon the streets of incorporated cities, in which the county has no concern or control, is a gift or grant within the meaning of the Constitution.   [Art. 4, sec. 46.]

In the case last cited it is said:   "By section 7663, Revised Statutes of 1889, it is made the duty of the county court of each county, at the May term every year, to appropriate and subdivide all the revenues collected and to be collected for the purpose named in that section, among which is the duty to appropriate 'a sum sufficient for the payment of all necessary expenses for the building of bridges and repairing of roads, including the pay of road overseers of such county.' "

The law of 1895 does substantially the same thing; that is, section 9618, Revised Statutes 1899, applies three-sixths of the four-sixths of the county dramshop road money and the property tax road money to the building of permanent roads in the district where paid outside of the cities and villages, leaving the other one-sixth of the county dramshop road money to be applied under section 2996, Revised Statutes of 1899, under the direction of the county court.

In State ex rel. v. County Court, 128 Mo. 427, it was held that moneys acquired by a county from the taxation of the properties of her taxpayers is not the private property of the county, and an act of the General Assembly authorizing the county court to appropriate part of the county dramshop license collected in a certain

township to the liquidation of such township's indebtedness was constitutional and valid.

Our conclusion is that the law is not unconstitutional upon either of these grounds.

It is further contended that the act violates section 53, article 4 of the Constitution, in that it divides cities of the third class into two classes, making two classes out of one, and is therefore special legislation.

Article 9, section 7, of the Constitution provides: The General Assembly shall provide, by general laws, for the organization and classification of cities and towns. The number of such classes shall not exceed four; and the power of each class shall be defined by general laws, so that all such municipal corporations of the same class shall possess the same powers and be subject to the same restrictions. The General Assembly shall also make provision, by general law, whereby any city, town or village, existing by virtue of any special or local law, may elect to become subject to, and be governed by, the general laws relating to such corporations.

By sections 5252, 5253, 5254 and 5255, Revised Statutes 1899, cities are divided in four classes.

By section 5254, supra, it is provided that "all cities and towns in this State containing three thousand and less than thirty thousand inhabitants, which shall elect to be a city of the third class, shall be cities of the third class," and, by section 5255, supra, it is provided that "all cities and towns in this State containing five hundred and less than three thousand inhabitants, and all towns existing under any special law, and having less than five hundred inhabitants, which shall elect to be cities of the fourth class, shall be cities of the fourth class." It thus seems that although a city organized under a special charter may have the requisite number of inhabitants to become a city of the third class, it does not *ipso facto* become such, but that in order to do so it must proceed in accordance with section 5257, Revised Statutes of 1899.

Because general laws are passed relating to cities operating under special charters it does not make such laws operating upon all of such cities, special laws.

By the Constitution the Legislature was required to provide for four classes of cities, and to give to each city of a given class, the same powers, and to subject each class to the same restrictions, but cities of the third class having special charters are not included in this classification unless they elect to become so, as before indicated. It is therefore plain that cities which retain their special charters do not belong. to either of the classes provided for by the Constitution, although they may have the requisite number of inhabitants to become such, unless they first elect to do so.

It is also claimed that the act is special legislation for the further reason that it gives special rights and privileges to these road districts that are not given to other road districts in the same county, by taking money already appropriated to the general road district by the Act of 1893 (Laws 1893, p. 150). The act applies alike to all road districts in the State which may be organized under and in accordance with its provisions, and the fact that much of the territory of the county may not be included in the road district thus organized, and that one-fourth of all the dramshop, pool or billiard table licenses collected by any city within any special road district, and a certain portion of the county taxes upon property within such special road district, and a certain portion of the taxes derived from dramshop, pool or billiard table licenses on business within such special road district, are applied to the construction and repairment of roads within such district, instead of the entire county, do not bring the act within the meaning of the inhibition of the Constitution in regard to special legislation.

In Lynch v. Murphy, 119 Mo. l. c. 172, it was said: "It is also insisted by counsel for plaintiffs that said acts are in conflict with section 53 of article 4 of the Constitution; that it is a special law; that it regulates the affairs of townships; creates new offices; refunds

moneys legally paid into the treasury and grants special privileges. In support of this contention, he relies upon State ex rel. v. Herman (75 Mo. 346); but in that case it was expressly said 'that a statute which relates to persons or things, as a class, is a general law, while a statute which relates to particular persons or things of a class, is special.' The statute now under consideration refers to all of the road districts in all the counties in the State where there are dramshops, and to all townships that are indebted and that have compromised, or that may hereafter compromise their indebtedness. It does not refer or have reference to any particular county, road district or township and is not local or special in its application.''

To the same effect is the case of State ex rel. v. County Court, 128 Mo. 427.

It is well settled that a law which includes all persons who are in or who may come into like situations and circumstances is not special legislation. [State ex rel. v. Wofford, 121 Mo. 61; State ex rel. v. Yancy, 123 Mo. 391; Spaulding v. Brady, 128 Mo. 653; State ex rel. v. Higgins, 125 Mo. 364.]

A further contention is that the act is violative of section 3, article 10, of the Constitution, in that it appropriates public revenue to a private purpose.

We are unable to see the force of this contention, for certainly the appropriation of moneys to the construction, repairment and maintenance of public roads which are for the use and benefit of the public, can in no sense be considered as an appropriation of moneys for a private purpose.

It is also said that sections 17 and 18 of the act provide for the levying an extra tax in these road districts, that section 17 provides for levying taxes on property for road purposes of not less than ten nor more than twenty cents on a hundred dollars of assessed valuation; that section 18 provides for a special poll tax on all inhabitants of the special road district between twenty-one and sixty years of age, of $2.50,

while in all that part of the county not embraced in special road district the age is between twenty-one and fifty, the assessment is not less than $2 nor more than $4, while section 3 of the Constitution, supra, provides, that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied by general laws."

The .act in question does not discriminate in the levy of a poll tax in the districts organized under it, but is uniform upon the same class within the territorial limits of the authority levying the 'tax, to-wit, upon every male inhabitant in said district not within the limits of an incorporated town or city of the third or fourth class, having a special charter.

"The only prohibition in the section being discussed is that which forbids inequality, favoritism, to be exercised in imposing taxes upon the 'same class of subjects.' So long as this is not done, the Constitution is not infringed, nor the rules of uniformity and equality violated." [St. Louis v. Bowler, 94 Mo. 630; Cooley on Tax. (2 Ed.), 170, 171, and notes.]

The mode of levying and collecting taxes rests solely with the Legislature, and where laws with respect thereto operate alike on all persons within a certain district or municipality organized under and in pursuance of such laws, and they are for the benefit of the inhabitants of such district or municipality as well as of the general public, as in the case at bar, they are not open to the objection urged against the act in this case.

A final contention upon this theory of the case is, that the act violates section 10, article 10, of the Constitution, in that it attempts to appropriate money levied and collected by city authorities to uses and purposes outside of such cities. Cities are practically as much interested in public roads beyond their corporate limits which lead into and enter them as they are in their own streets, and have heretofore been taxed to keep up such roads. [Secs. 4575 and 7663, par. 2, R. S. 1889.] And they had the power to appropriate a sum of money not

to exceed ten per cent of the annual general revenue for that purpose. [Sec. 7922, R. S. 1889.] It must follow that if the Legislature had the power to permit cities and towns to improve roads beyond their limits, it possesses the power to direct it to be done. In State ex rel. v. Owsley, 122 Mo. l. c. 78, it was said: ''The purposes for which such local taxes have always been imposed are not alone the support of the local government, but the support of many other public burdens, among which may be mentioned maintaining public schools, making and keeping in repair the public roads and bridges,'' etc. This contention must also be ruled against the plaintiffs.

As the conclusion reached necessarily results in an affirmance of the judgment, it is deemed unnecessary to pass upon other questions presented by counsel for defendants in his brief.

The judgment is affirmed. All of this Division concur.